No. 14,297.

CITY OF SHREVEPORT VS. MALONEY AND SCHULSINGER.

SYLLABUS.

1. The following is an article of the Constitution (Art. 188) : "Gambling is a vice, and the Legislature shall pass laws to suppress it." Gaming unlawful by satute remain in force.
2. Laws heretofore passed against gambling do not include betting on horse races in any form. Betting on horse races, in view of the bettors, within their means, is not unlawful, but, on the contrary, has the law's special sanction. The question whether the betting on races at a distance, out of view, through the medium of the turf exchange, should be suppressed as being gambling, is one left to the Legislature by the clear terms of the Constitution.
3. The law grants an action for the payment of bets on games tending to promote skill "in the use of arms, such as the exercise of the gun, and foot and horse racing." If this article affords the opportunity of inducing patrons of races to gamble, to the extent that the gambling is carried on, it should be legislated against under the article of the Constitution cited.
4. Crimes and offenses are statutory ; and, if acts become a public wrong against the policy of the State, and the State has designated the authority by which the wrong shall be declared, the authority remains where it has been placed. Gaming is to be prohibited by statute to be enforced by the courts.

APPEAL from the First City Court, City of Shreveport.—*Hicks, J*

*Edward Hughes Randolph,* City Attorney, for Plaintiff, Appellant.

*M. C. Elstner, Wise & Herndon,* and *Farrar, Jonas & Kruttschnitt,* for Defendants, Appellees.

The opinion of the Court was delivered by

BREAUX, J. Plaintiff complains of the turf exchange's methods of carrying on business by the defendants within her limits and seeks to have the establishments closed.

The record discloses that the defendants at their respective places of business accepted and made bets on horse races actually run. It appears that on blackboards at their exchanges are posted notices of races to be run with the odds on the horses and the betting. One wishing to bet picks out his horse, pays his money, and receives a ticket therefor. If he has picked out the winning horse, he gets his money back and the amount to which he is entitled on the bet.

The following illutsrates the manner of betting. If betting on one of the horses named on the board as one of the racers is selling at four dollars as against six dollars, the one who bets receives a ticket for four dollars, and if his horse wins, he hands his ticket to the exchange and receives back four dollars plus six dollars. If his horse loses, he gets nothing.

The defendants denied that they were guilty, in answer to the charge brought against them before the City Court, and also excepted to the affidavit by which they were denounced, on the ground that the ordinance plaintiff sought to enforce is illegal, oppressive and unconstitutional, and pleaded that Article 188 of the Constitution is not self-operative, as it directs and instructs the Legislature of the State to pass laws for the suppression of gambling.

The judge of the lower court quashed the affidavit and dismissed the defendants upon grounds set forth in a well-considered opinion. From this judgment plaintiff prosecutes this appeal.

At the outset we will state that the issues are confined to horse races and the bets to which they give rise. There is no question before us regarding bets on baseball games or prize fights. It does not appear that bets on prize fights and baseball games have been received since the ordinance attacked has been passed.

If plaintiff were to succeed in bringing the cause within the ban of a prohibitory law, there could arise no reasonable objection to the enforcement of its ordnance against the business now the subject of discussion.

Plaintiff points to Article 188 of the Constitution of 1898 as containing the authority to suppress gambling and as being the prohibitory law which enabled the municipality to adopt the ordinance to which we have before referred.

The power, as we think, was delegated to the Legislature, and under no principle of construction can it be made to read so as to embrace within its terms the different municipalities of the State as having the power to suppress any act as gambling not denounced as gambling by the Legislature.

There is no law on the Statute Books which makes betting on horse races as carried on by the turf exchange a public wrong. It cannot be held to come within the terms of the article cited above for the very plain reason that the article is not operative *proprio vigore*. The Legislature had not deemed proper to carry out its mandate. Until it takes action, the article cited must remain without effect. To the Legislature

alone the power is delegated of legislating against gambling. The intention was, as we judge, to make provision for a general statute on the subject, and not to leave it to one municipality to adopt ordinances against gambling in all forms. Above all, a power having been specially delegated to the Legislature, it is not delegated to one of the subordinate branches of the State government.

If the Legislature should wish to suppress the turf exchanges throughout the State, or in any particular locality, as to that matter, it has it in its power to legislate to that end. It is not left to the municipality of Shreveport, under its present charter, to make that gambling which the Legislature has not heretofore denounced as gambling.

Under a general delegation of power to the City of Monroe to regulate and preserve the good order and peace of the city, this court held that the city was authorized to adopt an ordinance prohibiting a game which was specially denounced. See Statute 7 of 1882. There was a concurrent power in the State and in the municipality, the court said, to prohibit the particular act of gambling mentioned. He, the defendant, had transgressed the State Statute. City of Monroe vs. Hardy, 46 A 1233.

Here the defendants have not transgressed any State Statute, for the law-making power has remained strictly silent upon the subject of betting on horse racing through the medium of turf exchanges.

In another case, to which we are referred by plaintiff, the evidence satisfied the court that the act which the municipality sought to suppress came within the definition of a lottery and was, for that definite reason, repugnant to the policy of the State, and, besides, the municipality was seeking to enforce a statute of the State adopted to prohibit the particular game denounced as gambling. New Orleans vs. Collins, 52 A. 976.

We have no hesitation in saying that the law denouncing lotteries (Art. 178 of the Constitution) is in force, for it is not limited, as is Art. 188 of the Constitution against gambling. It (Art. 178 of the Constitution) announces the policy of the State as being against lotteries and makes it an act repugnant to the peace and good order.

The business of the defendants has never been considered a lottery and, as conducted, it is not a lottery. The basis of the business of turf exchanges is the running of horses and the betting on the results. To an extent, at least, these acts have received legal sanction, as right to recover a bet on the result of a horse race has been recognized. C. C. 2983.

The contention is that the betting made under the conditions here have no tendency to promote and develop fine horses, as the betting is made on races run at distant places in the country, where no race or horse is ever seen by the parties who put up their bets. If horse racing, which in itself has nothing offensive to public morals, as plainly indicated by the cited article *supra,* is made the means to carry on betting which is nothing but gambling, it should receive the attention of the Legislature as directed by Article 188 of the Constitution.

We can only say here, in conclusion, that an offense is an act prohibited, and that the act which plaintiff seeks to prohibit is not prohibited by statute. If these exchanges furnish no races and no race horse is in view, and nothing to elevate and inspire the love of the beautiful; no open air and no bright skies and contented spectators admiring the speed and endurance of the spirited steed, but on the contrary there is only a small room with a blackboard on the side with writing on it in chalk, away from the race course, attracting and decoying the public to take a chance, the evil is one for legislative concern.

This particular function belongs to another branch of the government. It requires legislative action.

Whilst upon us it devolves not to enact but to declare the law.

For reasons assigned, the judgment is affirmed.