(36 South. 870.)

No. 15,100.

CITY OF SHREVEPORT v. SCHULSINGER et al.*

(May 23, 1904.)

POOLROOM — REGULATION—EVIDENCE—CONSTITUTIONAL LAW.

1. The business of conducting a poolroom and turf exchange falls within a class that may be regulated, discriminated against, or suppressed by the state, in the exercise of its police power, and the power to "regulate," conferred by Act No. 206, p. 397, of 1902, on municipalities having less than 50,000 inhabitants, authorizes such municipalities to confine that business within prescribed territorial limits, where it will tempt only those who are seeking temptation.

2. Testimony, of a person who has never tried the experiment, to the effect that a poolroom and turf exchange cannot. be successfully conducted a few squares away from the heart of a city, amounts, at best, to an opinion, and not the opinion of an expert, and does not prove the fact.

3. The power to regulate does not include the power intentionally to suppress, and one may not with intention do indirectly that which he is unauthorized to do directly; but, where the police power is exercised with the bona fide intention of regulating a business which is subject to its dominion, it is lawfully exercised, notwithstanding the fact that the business may thereby be made unprofitable and perish for lack of support.

4. The legitimate exercise by a state of its police power is not controlled or affected by the provisions of the fourteenth amendment to the Constitution of the United States.

(Syllabus by the Court.)

Appeal from City Court of Shreveport; Cal. D. Hicks, Judge.

A. Schulsinger and A. E. Maloney were charged with violating an ordinance of the city of Shreveport. Judgment for defendants, and the city appeals. Reversed.

Ruffin Golson Pleasant, City Atty., for appellant. Wise, Randolph & Rendall and Milton Carter Elstner, for appellees.

### Statement of the Case.

MONROE, J. Defendants, having been charged with operating and conducting a poolroom and turf exchange in Shreveport, outside of certain limits, in violation of a city ordinance, demurred, and moved to quash the affidavit, on the grounds that the ordinance is unjust, discriminative, and oppressive, in that the limit prescription practically prohibits the business in which they are engaged, will render valueless or impair the value of personal property, including a lease, used and held by them for its purposes, and will deprive them of the means of livelihood; and

*Rehearing denied June 20, 1904.

that said ordinance is ultra vires of the city, and in contravention of the state and federal Constitutions, in that it seeks to deprive defendants of their property without due process of law. The demurrer was sustained, and the plaintiff has appealed. The ordinance in question reads, in part, as follows:

"Section 1. Be it ordained * * * that * * * all pool rooms and turf exchanges * * * shall be confined to the following district [and then follows a delimitation of the district to which the business is confined] and it is hereby made unlawful for pool rooms or turf exchanges to be open, conducted, or operated outside of said limits."

Other sections provide penalties, and repeal all ordinances on the same subject.

"It is admitted that the defendant, A. E. Maloney, conducts, and did conduct on July 8, 1903, a poolroom and turf exchange at No. —— Texas street, in the city of Shreveport, La., outside of the limits prescribed by the city ordinance, and contrary to the provisions of the same; that the prescribed limits are within three blocks of Texas street, where the latter intersects Common street; that Texas street is the leading business street and most frequented thoroughfare of the city; that the defendant has paid no license to operate a poolroom or turf exchange for the year 1903; that, at the time defendant was arrested, the races bet on in defendant's turf exchange were all being run on tracks outside of the state of Louisiana; that none of the races bet on in said turf exchange were or are within view of the bettors therein, but that information respecting same was and is received by telegraph, marked upon blackboards, or called by defendant or his employés as received by wire."

But two witnesses were examined. Schulsinger, defendant, testifies that he and his co-defendant are partners; that their place of business is in the Phœnix Hotel, on Texas street, in the heart of the business portion of the city; that their furniture and fixtures are worth over $2,000; that they pay $200 a month rent, under a lease which has two years or more to run; that the district assigned by the ordinance to pool rooms and turf exchanges is practically the same as that assigned to lewd women; that there are in that district a few small barrooms, grocery stores, a warehouse, and an oilmill; that the larger proportion of his present patronage will be lost if he is compelled to move into said district; that his business cannot be there conducted profitably, and hence, if the ordinance is enforced, that he and his partner will be obliged virtually to sacrifice their installation, and will probably lose $100 a month on their lease. The other witness is a wholesale and retail liquor dealer who has a barroom, with a turf-exchange accompaniment (not now in operation), in the heart of the city, and other barrooms in the district delimited by the ordinance. His testimony as to the probability of successfully conducting a poolroom and turf exchange in that district is about the same as that of Schulsinger, and, it may be remarked, the testimony of both on that subject was objected to on the ground that it amounts merely to an opinion, neither of them having attempted to conduct a business of that character in the district in question, which is shown to be within 2½ squares of the courthouse and post office, and within 3½ squares of Texas street and the City Hall.

### Opinion.

Counsel for defendants say in their brief that the ordinance in question impairs the obligations of a contract, in that defendants had received from the city of Shreveport a license to conduct the business of "commission" for the year ending December 31, 1902. No such defense is set up in the pleadings. The contract, if any there was, ex vi termini related to the "commission," and not to the poolroom and turf-exchange, business, and expired in 1902, whereas the defendants are here charged with the offense of having conducted the business last mentioned in 1903, and it is admitted that they had no license for that business for that year. It is further said that the plaintiff, assuming to act under a law which authorizes it to "regulate," has adopted an ordinance the effect of which must be to "suppress," the business in which the defendants are engaged, and that the ordinance is in contravention of the fourteenth

amendment to the Constitution of the United States, "in that it seeks to abridge and destroy the privilege and immunity of a citizen of the United States in denying him the right to exercise his energies in the pursuit of a lawful calling, and deprive him of liberty and property and the equal protection of the law."

In a case against the same defendants which was heard in this court some two years ago, it appeared that the city of Shreveport had undertaken directly to suppress, as mere gambling, the business in which the defendants are engaged; but it was found that the same article of the Constitution which declares gambling to be a vice imposes upon the General Assembly, and not upon the municipal corporations of the state, the duty of suppressing it; and it was held that, as the General Assembly had not included the business of betting on horse races in the laws enacted for the suppression of gambling, it was incompetent for the city of Shreveport to do so. In the course of the opinion, however, the court, after referring to the recognition given by the Code (Civ. Code, art. 2983) to betting of that character, as upon a game "tending to promote skill in the use of arms," etc., said:

"If these exchanges furnish no races, and no race horse is in view, and nothing to elevate and inspire the love of the beautiful, no open air and no bright skies, and contented spectators admiring the speed and endurance of the spirited steed, but, on the contrary, there is only a small room, with a blackboard on one side, with writing on it in chalk, away from the race course, attracting and decoying the public to take a chance, the evil is one for legislative concern." City of Shreveport v. Maloney & Schulsinger, 107 La. 193, 31 South. 702.

The language of the foregoing excerpt, following the word "contrary," describes the business in which, according to the testimony now before the court, the defendants are engaged, and, being "evil," it falls within that class which may be regulated, discriminated against, or suppressed by the state, in the exercise of its police power, and which cannot, therefore, demand the consideration accorded to vocations which are necessary or useful to the community or harmless in themselves. The General Assembly has not thought proper to attempt its outright suppression, but very shortly after the case above cited was decided it passed a law (Act No. 206, p, 397, of 1902) granting to all municipal corporations having less than 50,000 inhabitants authority "to regulate, within their limits, pool rooms and turf exchanges," and it was in the exercise of the authority thus conferred that the city of Shreveport adopted the ordinance under which the defendants are now prosecuted.

To the objection that the effect of the ordinance will be to suppress the business which it purports to regulate, and that one may not do indirectly that which he is unauthorized to do directly, the answer is that the business in question is not easily suppressed, but that, if suppression should result, the city of Shreveport is nevertheless within its rights. The only evidence that we have as to the probable effect of the ordinance is that of the two witnesses who are interested in the business to which it applies; but they do not testify to facts, they merely give their opinions upon a matter in which they are not qualified as experts, since one cannot be an expert in that of which he has had no experience, and neither of them has ever tried the experiment of conducting a poolroom and turf exchange in the district to which that business is relegated. No doubt, the proprietors of the gambling establishments of Baden Baden and Homburg might have given some such testimony when they were excluded from those places, and yet the business in which they were engaged still flourishes at Monte Carlo. But, as we have said, even though the poolroom and turf-exchange business in Shreveport should expire under it, the ordinance which is here attacked is none the less valid. The rule invoked by the defendants, fairly

interpreted, means that one may not by intention do indirectly that which he is unauthorized to do directly, otherwise the states of the Union could not enforce their quarantine and inspection laws, since, in so doing, they impinge upon the power of Congress to regulate commerce with foreign states, etc. And it might be said that the General Assembly of this state has no authority to require a bond of appeal in a civil case, since the party cast may not be able to give it; or that a municipality has no authority to impose a high license upon the retail liquor business, because the dealer may not be able to pay it. The city of Shreveport is authorized to regulate an evil business, and we do not understand that it must exercise its authority by establishing that business in the principal hotel upon its principal street; on the contrary, the plain purpose of the lawmaker, as we take it, is that the business shall be so regulated and relegated as to tempt as few people as possible, and as not to tempt those who are not seeking temptation; and it is this purpose, and not the intention to exceed its authority by suppressing the business, that should be ascribed to the plaintiff. That a business of the character in question may be discriminated against, and that such discrimination is not prohibited by the fourteenth amendment to the Constitution of the United States, is too well settled to admit of discussion. The proposition that the ordinance cannot be enforced because the defendants' fixtures and paraphernalia will thereby be rendered valueless, and because they may sustain a loss on their lease, is untenable. Their business has always been subject to the exercise by the state of its police power, and, having assumed the risk of the application of that power when they installed themselves and signed the lease, they have no just cause of complaint that it is now applied.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that this case be remanded to the court a qua, to be there proceeded with according to law.