On Rehearing.
LAND, J.
The pleadings and issues involved in this controversy have been so fully stated in the original opinion of this court that repetition would be useless.
The Attorney General conceded in argument that the motion in arrest properly raised the question of the validity of the statute. We will consider the case from that point of view.
The gist-of defendant’s objection is that the terms of the statute are so vague “as to mean everything in general and nothing in particular.” It is argued that the term “pool room” is generic, embracing many different kinds, none of which are designated in the statute, which consequently is void for obscurity.
Act No. 128, p. 292, of 1904, was passed for-the suppression of pool rooms from and after September 1, 1904. This act was approved July 3, 1904. Hence we may infer that the “pool rooms” intended were in operation in the state of Louisiana when the act was adopted and that a period of grace was granted for the purpose of enabling the owners to wind up their affairs. The act further declares the operation of pool rooms to be gambling. It is to be inferred that the statute contemplates “pool rooms” whose operation was not considered as gambling under the general laws of the state existing at the date of the adoption of Act No. 128, p. 292, of 1904.
At the same session of the General Assembly Act No. 127, p. 293, was passed for the suppression of turf exchanges and declaring their operation to be gambling. Both acts were introduced by the same representatives, and, mutatis mutandis, their provisions are identical.
Now, what kind of business was conducted in pool rooms and turf exchanges that required additional legislation to place its operation in the category of gambling. The answer to the question may be found in the decisions of this court to the effect that betting on horse races was permitted by the Civil Code, and therefore could not be considered as gambling.
In City of Shreveport v. Maloney and Sehulsinger, 107 La. 193, 31 South. 702; defendants were prosecuted for operating a “turf exchange” in violation of a city ordinance. They were discharged in the city court, and the judgment was affirmed on appeal. The conclusions of this court are well expressed in the syllabus, as follows, viz.:
*270 “Laws heretofore passed against gambling do not include betting on horse races in any form. Betting on horse races, in view of the betters, within their means, is not unlawful, but, on the contrary, has the law’s special sanction. The question whether betting on races at a distance, out of view, through the medium of turf exchanges, should be suppressed as being gambling, is one left to the Legislature by the clear terms of the Constitution.”
This case was decided at the 1901-02 term.
In July, 1902, the Legislature passed Act No. 206, p. 397, granting authority to municipal corporations to regulate “pool rooms and turf exchanges” by ordinances and to prescribe penalties for the violation of the same.
Under the authority of this act the city of Shreveport passed an ordinance confining the business of conducting a pool room and turf exchange within certain limits. This ordinance was challenged by Schulsinger and others, prosecuted for its violation, on a number of grounds, and was declared null and void by the city court. On appeal this judgment was reversed by this court and the validity of the ordinance was sustained. See City of Shreveport v. Schulsinger et al., 113 La. 9, 36 South. 870. This court held therein that the power to regulate did not include the power to intentionally suppress, but could be lawfully exercised notwithstanding the fact that the business might thereby be made unprofitable and perish for lack of support. In both decisions (107 La. 193, 31 South. 702, and 113 La. 9, 36 South. 870) the business of operating a pool room or turf exchange was recognized as an “evil” which might be regulated, discriminated against, or suppressed by the state in the exercise of its police power. In both cases the opinions show that the business conducted was betting or receiving bets on horse races out of view of the tracks. Hence we may conclude that both acts of 1904 were intended to suppress such business, whether called a “turf exchange” or “pool room.” Conceding that the term “pool” or “pool room” has, according to lexicographers, several meanings, we are of opinion that the legislation on the subject, the direct rfr suit of the decisions of this court, show that the term “pool room” was used to designate a room in which betting on races is carried on. Our Civil Code declares that “the words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.” Article 14. The lawmaker, in enacting this rule of construction, assumed that the judges must know what the community knows as to the popular meaning of words.
There is a constant evolution in language, producing new words and phrases, and modifying the significance of old ones. It does not follow that words not found in the dictionaries have no meaning. Eor example, the term “turf exchange” is a new combination of old words, indicating a place where persons meet to transact some kind of business appertaining to the “race course or racing.” But the true meaning of the words cannot be ascertained without taking notice of their popular use. The laws to suppress “pool rooms” and “turf exchanges” are on the same subject-matter, and “what is clear in one statute may be called in aid to explain what is doubtful in another.” Oiv. Code, art. 17. Taken together, both acts indicate a clear intent to suppress gambling on horse races carried on in rooms or places distant from the tracks.
It has been well said that “the court will resort in the interpretation of statutes to the common knowledge of the public at large on conditions which led to its adoption.” Bishop on Statutory Crimes, § 77, footnote.
Wigmore, in his recent work on Evidence, after stating that the doctrine of judicial notice applies to “the meanings of words and phrases,” says:
“So far as they are notorious and unquestioned, they are constantly found noticed. Here, too, the local circumstance and usage of the time must more than ever control the ruling.” Volume 4, p. 2582.
*271 The evil sought to be remedied by the legislation of 1904 was notorious and unquestioned, and was a matter of public concern, not only in Louisiana, but in other states of the Union. Judges must know, as everybody knows, that this evil was gambling on horse races through the medium of pool rooms and turf exchanges.
We therefore hold that the words of the statute are sufficiently certain to indicate the particular offense intended by the lawmaker.
The second and last defense urged is that the defendant was not guilty of any offense in this state, because the bets or wagers, or offers to bet, were telegraphed out of the state, and placed out of the state; the defendant receiving a commission upon the bets so placed.
The district judge, in his able opinion, says:
“The court is constrained to conclude that, in determining the legislative intent in the use of the term “pool room,” it must avoid all verbal subtleties, all astute and narrow definitions, and decide that the legislative intent was to use the term in its common or popular meaning, and give the act, a remedial statute, such a construction as to correct the mischief at which it was aimed, and that the mischief thus aimed at was operating a room where people resort to wager on horse races run away from the room, in ' or out of the state, whether such bets be made individually or in combination; further, that the wager is completed when the defendant receives and transmits the bet or offer to bet to a person outside of the state; and that the modus operandi disclosed by the statement of fact shows simply a subterfuge and studiously contrived evasion.”
The bets or offers were received by defendant in his pool room or turf exchange in Shreveport, under the guise of telegrams sent to Texarkana, Ark., a neighboring town. The bets won were paid by defendant in Shreveport.
The statute prohibited the conduct and operation' of “pool rooms.” It is a police regulation to suppress gambling in rooms or exchanges on races remote from the track. The harm is done where the betters find the opportunity and the means to make their wagers, and is the same, whatever may be the form of betting. To hold that a pool room may be lawfully operated in this state through the thin disguise of telegraphic offers to bet wired to a confederate in another state would nullify the statute. The venue was well laid where the pool room was actually operated. See McClain, Criminal Law, §§ 1297, 1305, and section 1307, footnote. See, also, People v. Weithoff, 93 Mich. 631, 53 N. W. 784, 32 Am. St. Rep. 532, where in the case of a gambling room the court said:
“The money is placed in the hands of the defendant by one party to the wager, and if he wins he receives the money won in this room; if he loses it, knowledge of the loss is brought to him in this room. That it requires the intei'vention of another agency (a telegraphic company) does not relieve the respondent. It would be a reproach to the law if it were possible that responsibility could be avoided by any such subterfuge as is apparent in the very scheme adopted by the respondent in this case.”
The district attorney also refers to the case of Ames v. Kirby, Sheriff, 59 Atl. 558, recently decided by the Supreme Court of New Jersey, and not yet officially reported.
We therefore, disregarding all questions of criminal pleading and considering the issues as properly presented for review, are of opinion that the judgment appealed from is correct, and should be affirmed.
For the reasons assigned it is ordered that our former decree herein rendered, affirming the sentence appealed from, be reinstated as the final judgment of the court.