(42 South. 650.)

No. 16,338.

## CITY OF BATON ROUGE v. BUTLER.

(Nov. 26, 1906.  Rehearing Denied Jan. 7, 1907.)

1. Intoxicating Liquors—City Ordinance—Validity.

The grant of power "to license, regulate, and restrain" shops for the sale of intoxicating liquors is broad enough to warrant a city ordinance requiring applicants for such license to procure the written assent of a majority of the property owners in the immediate vicinity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Intoxicating Liquors, § 66.]

2. Same—Control by Municipalities.

Act No. 221, p. 451, of 1902, in granting the exclusive power to the authorities of parishes and municipalities to make such rules and regulations for the sale of intoxicating liquors as they may deem advisable, delegated to them all the powers of regulation inherent in the legislative department of the government.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Intoxicating Liquors, §§ 7–13.]

3. Constitutional Law—Legislative Powers—Delegation.

That the Legislature may constitutionally authorize the enactment of such an ordinance was affirmed in City of New Orleans v. Macheca, 112 La. 559, 36 South. 590, and in City of New Orleans v. Smythe, 116 La. 685, 41 South. 33.

Breaux, C. J., and Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from City Court of Baton Rouge; Sambola Jones, Judge.

Henry J. Butler was convicted of violating an ordinance of the city of Baton Rouge, and appeals. Affirmed.

T. A. Moore, for appellant.  Edward Elliott Wall, for appellee.

LAND, J.  Defendant was convicted and fined for violating section 16 of the Penal Code of the city of Baton Rouge, forbidding the opening or keeping of any coffee house, barroom, or grogshop without first procuring the license required by law.

Defendant admits that he retailed malt and spirituous liquors without a license, but pleaded below that he should not be held to answer such charge, for the reason that sections 15 and 16 of the city charter of Baton Rouge are illegal and unconstitutional.

It appears from the statement of facts that defendant had applied to the city council for permission to open his saloon, which was refused, presumably for the reason that defendant had not furnished the written consent of the property owners as required by section 15 of said Penal Code, though no reason for the refusal was assigned by the city council. It further appears that the defendant applied to the city treasurer for a half-year license to sell liquor, and tendered to that officer the proper amount for such a license, and that said city treasurer declined to accept the tender and refused to issue a license to the defendant.

The city judge gave reasons for judgment as follows, to wit:

"The law governing and regulating barrooms is a police regulation. The securing of the signatures of local residents and property holders is merely one of the elements of the case. Each application to open a barroom comes before the council on its merits, and the council does not delegate the authority to pass upon the same to others. In this case permission was refused, and the barroom was opened in defiance of law."

The appeal of the defendant brings before us for review the question of the illegality and unconstitutionality of the said sections of the ordinance, which read as follows, viz.:

"Sec. 15. No license shall issue authorizing any person or persons to open a coffee house, barroom, grogshop, billiard table or tenpin alley, except on the presentation of a petition requesting the same, signed by a majority of the property holders and a majority of the assessed value of property fronting on the street or streets, within 300 feet of where said business is to be opened.

"Sec. 16. Any one convicted of opening or keeping any of the establishments named in the foregoing section, without first procuring the

license required by law, shall upon conviction before the city judge pay a fine of not more than fifty dollars or twenty days' imprisonment in the city jail, and the place of business be closed until license is regularly procured."

The city charter of 1898 (section 20) authorizes the council—

"To license, regulate, and restrain   *   *   * shops for retailing alcoholic liquors   *   *   * and to close houses or places for the sale of intoxicating liquors when the public safety may require it, and to authorize the mayor and police to close such places."

Act No. 221, p. 451, of 1902, granted to the police juries of the several parishes and the municipal authorities of villages, towns and cities—

"The exclusive power to make such rules and regulations for the sale   *   *   * of intoxicating liquors as they may deem advisable."

The main contention of the defendant is that the city council had no authority to delegate its police powers to the property owners in certain localities, or, in other words, to require the applicant for a license to present a petition requesting the same, signed by a majority of the property holders of the immediate vicinity. The answer is that Act No. 221, p. 451, of 1902, granted to the municipal authorities throughout the state all the police powers of the state over the subject-matter of the regulation of the sale of intoxicating liquors. The term "exclusive power" necessarily implies full legislative authority. The power given by the city charter "to license, regulate, and restrain" is broad enough to cover all reasonable restrictions on the liquor traffic.

In the recent case of City of Shreveport v. Schulsinger, 113 La. 9, 36 South. 870, this court held that the power to "regulate" poolrooms authorized the municipality to confine the business to prescribed territorial limits, notwithstanding the fact that such business might thereby be made unprofitable and perish for lack of support.

Black, in his work on Intoxicating Liquors (section 47), says:

"The license laws commonly provide, as a necessary condition to the granting of a license in any case, that the person's application shall be recommended or assented to by a certain number of persons residing in his neighborhood, or by a majority or other portion of the citizens or voters in the ward or district where he proposes to carry on business. Much objection has been made to such a requirement. But the courts have always ruled that it was no invasion of personal rights, but a lawful and proper police regulation."

The author cites, among others, the cases of Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620, and Ex parte Christensen, 85 Cal. 208, 24 Pac. 747. In the latter, the Supreme Court of California held that the grant to the municipality of San Francisco of the right to make "all such local, police, sanitary, and other police regulations as are not in conflict with general laws," authorized the council of said city to pass an ordinance requiring, as a condition precedent to the issuance of a liquor license, the written consent of a majority of the board of police commissioners or the written assent of 12 property owners in the block or square where the business was to be carried on.

The doctrine announced by Black, cited supra, was adopted by this court in City of New Orleans v. Macheca, 112 La. 559, 36 South. 590, which case was reaffirmed in City of New Orleans v. Charles Smythe, 116 La. 685, 41 South. 33.

In State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 South. 999, the proceeding was by mandamus to compel the issuance of a license, and it appeared that the relator had complied with the condition precedent of the presentation of a petition signed by the requisite number of property owners. That case is no authority on the question now before us. The only difference between the case at bar and the Macheca and Smythe Cases is that the charter of the city of New Orleans expressly authorized the ordinance, while the charter of the city of Baton Rouge conferred the general power to regulate and restrain, and the act of 1902 the exclusive

power to regulate as the municipal authorities might deem advisable. Both of the latter grants are broad enough to cover all kinds and means of regulation and restraint short of prohibition or suppression, as was held in the Poolroom Case, 113 La. 9, 36 South. 870, already cited.

Section 15 of the Penal Code of Baton Rouge operates as a check on the multiplication and location of saloons, and also as a guaranty of the character of the applicant as a proper person to conduct such a business. Strike down this section, and there is nothing to prevent the establishment of the lowest class of barrooms in any locality of that city.

The objection that said section 15 deprives defendant of his property without due process of law is refuted by the doctrine of the Macheca and Smythe Cases, supra, following Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620.

Judgment affirmed.

MONROE, J. I dissent.

See dissenting opinion of BREAUX, C. J., 42 South. 652.