[No. 10206.    Department One.    June 8, 1912.]

# The City of Tacoma, *Respondent*, v. Gus W. Keisel, *Appellant*.[1]

Intoxicating Liquors—"Regulation"—Power Conferred on City —Anti-Treating Ordinance. As the power to "regulate" the sale of intoxicating liquor implies the power of partial prohibition, an anti-treating ordinance prohibiting the sale of intoxicating liquors in lcensed saloons to be drunk on the premises by any other person than the one buying the same, is within the power conferred by Rem. & Bal. Code, § 7507, authorizing cities of the first class to regulate the selling or giving away of intoxicating liquors, to grant licenses for any lawful purposes, to regulate the carrying on of occupations affecting the public health or good order of the city, and to make all regulations necessary for the preservation of public morality, health, peace, and good order within its limits.

Intoxicating Liquors—Regulation—Anti-Treating Ordinance— Reasonableness. An ordinance having for its purpose the prohibition of treating in licensed saloons is not an unreasonable regulation of the liquor traffic, under the power to regulate such traffic and to make regulations necessary for the preservation of public morality; the decision of the city authorities being controlling upon the courts unless the unreasonableness of the ordinance is free from doubt.

Same—Constitutional Law—Inherent Rights. A citizen has no inherent right to treat another to intoxicating liquors in a licensed saloon.

Ordinances—Enactment—Amendment. An anti-treating ordinance is not an amendment to the general ordinance upon the subject of the regulation of intoxicating liquors, required by charter to be enacted by a new ordinance containing the entire ordinance as amended, merely because it provides additional regulations and restrictions upon the sale of intoxicating liquors, where it is not enacted as an amendment, but in the form of an original ordinance, and each law could stand without conflicting with the other.

Constitutional Law—Class Legislation—Equal Protection of the Laws—Intoxicating Liquors—Anti-Treating Ordinance. An anti-treating ordinance prohibiting the sale of intoxicating liquors in licensed saloons to be drunk on the premises by any other person than the one buying the same, does not violate the provisions of the Federal and state constitutions securing to the citizen his

[1]Reported in 124 Pac. 137.

property and the equal protection of the laws, from the fact that only the act of selling liquor and not the purchase thereof is punishable.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 23, 1911, upon a trial and conviction of violating an anti-treating ordinance. Affirmed.

*Leo & Flaskett* and *Sullivan & Christian*, for appellant, contended, among other things, that the words "license," "regulate" and "restrain" are not equivalent to "prohibit." 14 Current Law 311; 28 Cyc. 750; *Steffy v. Town of Monroe City*, 135 Ind. 466, 35 N. E. 121, 41 Am. St. 436; *Howland v. State ex rel. Zirklebach*, 56 Fla. 422, 47 South. 963, 21 L. R. A. (N. S.) 192; *Mernaugh v. City of Orlando*, 41 Fla. 433, 27 South. 34; *Ensley v. State ex rel. Brown*, 172 Ind. 198, 88 N. E. 62; *Logan City v. Buck*, 3 Utah 301, 2 Pac. 706; *Miller v. Jones*, 80 Ala. 89; *Chicago Packing & Provision Co. v. Chicago*, 88 Ill. 221, 30 Am. Rep. 545. Ordinances in derogation of a common right, or in contravention of the state laws, or against the policies of the state laws, are illegal. 28 Cyc. 710; *Milliken v. City Council of Weatherford*, 54 Tex. 388, 38 Am. Rep. 629; *City of Durango v. Reinsberg*, 16 Colo. 327, 26 Pac. 820; *State v. Burns*, 45 La. Ann. 34, 11 South. 878; *Ward v. Mayor etc. of Greeneville*, 67 Tenn. 228, 35 Am. Rep. 700; *Long v. Taxing District of Shelby County*, 75 Tenn. 134, 40 Am. Rep. 55; *Philadelphia & Reading R. Co. v. Ervin*, 89 Pa. St. 71, 33 Am. Rep. 726; *Breninger v. Belvidere*, 44 N. J. L. 350; *City of Huron v. Carter*, 5 S. D. 4, 57 N. W. 947; *State v. Webber*, 107 N. C. 962, 12 S. E. 598, 22 Am. St. 920; *Ogden City v. McLaughlin*, 5 Utah 387, 16 Pac. 721; *State v. Dannenberg*, 150 N. C. 799, 63 S. E. 946; *St. Louis v. Gloner*, 210 Mo. 502, 109 S. W. 30, 124 Am. St. 750. A summary of the legislation of this state shows clearly that the policy of the state has never been to prohibit indulgence

by normal adults in intoxicating liquors, or the habit of one treating another; and the city cannot by ordinance abrogate these laws.   Woollen and Thornton, Intoxicating Liquors, §§ 255, 256; *Logan City v. Buck* and *Mernaugh v. City of Orlando, supra; Norris v. Oakman,* 138 Ala. 411, 35 South. 450; *State v. Langdon,* 29 Minn. 393, 13 N. W. 187; *Gilham & Brown v. Wells,* 64 Ga. 192; *City of Joplin v. Jacobs,* 119 Mo. App. 134, 96 S. W. 219; *Thompson v. City of Mount Vernon,* 11 Ohio St. 688; *Chicago v. Netcher,* 183 Ill. 104, 55 N. E. 707, 75 Am. St. 93, 48 L. R. A. 261; *Adams v. Mayor of Albany,* 29 Ga. 56; *City of Owensboro v. Sparks,* 99 Ky. 351, 36 S. W. 4; *Walsh v. City of Union,* 13 Ore. 589, 11 Pac. 312; *Horn v. People,* 26 Mich. 221; *Harris v. Intendent and Council of Livingston,* 28 Ala. 577; *Collins v. Hatch,* 18 Ohio 523, 51 Am. Dec. 465; *City of Mt. Pleasant v. Breeze,* 11 Iowa 399; *Phillips v. City of Denver,* 19 Colo. 179, 34 Pac. 902, 41 Am. St. 230; *Ex parte Patterson,* 42 Tex. Cr. 256, 58 S. W. 1011; *Lockwood v. Muhlberg,* 124 Ga. 660, 53 S. E. 92; *Mayor etc. of New York v. Nichols,* 4 Hill 209; *Tuck v. Town of Waldron,* 31 Ark. 462; *State v. Mott,* 61 Md. 297, 48 Am. Rep. 105.   Where there is a doubt as to the validity of an ordinance, because of interference with individual right, the doubt must be resolved in favor of the individual.   *State v. Webber, supra; Slaughter v. O'Berry,* 126 N. C. 181, 35 S. E. 241, 48 L. R. A. 442; *City of Ft. Scott v. Eades Brokerage Co.,* 117 Fed. 51; *Crofut v. Danbury,* 65 Conn. 294, 32 Atl. 365; *Dunham etc. v. Trustees of Rochester,* 5 Cowen 462; *Leonard v. Canton,* 35 Miss. 189.   The acts of the city are to be strictly construed.   1 Abbott, Municipal Corporations, § 113; 1 Dillon, Municipal Corporations (5th ed.), § 239; 1 Smith, Modern Municipal Corporations, §§ 562, 673; 2 Smith, Modern Municipal Corporations, § 1320.   The general welfare clause does not enlarge the list of specific powers granted.   2 Dillon, Municipal Corporations (5th ed.), § 585; *Tuck v. Town of Waldron, supra; Knapp v. Kansas*

*City,* 48 Mo. App. 485; *Winchester v. Redmond,* 93 Va. 711, 25 S. E. 1001, 57 Am. St. 822; *Tacoma Gas & Elec. Light Co. v. Tacoma,* 14 Wash. 288, 44 Pac. 655; *Farwell v. Seattle,* 43 Wash. 141, 86 Pac. 217; *Benton v. Seattle Elec. Co.,* 50 Wash. 156, 96 Pac. 1033; *Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259. Ordinances must be reasonable, not oppressive, nor in restraint of trade, nor interfere with common right. Smith, Modern Municipal Corporations, § 526; 1 Abbott, Municipal Corporations, § 127; 2 Abbott, Municipal Corporations, § 513; 1 Dillon, Municipal Corporations (5th ed.), § 237; 2 Dillon, Municipal Corporations (5th ed.), §§ 585, 596, 601. The defendant is deprived of the equal protection of the laws in that he is singled out for punishment for an act which is mainly the act of another. 8 Cyc. 1075; *Gulf, Colorado & Santa Fe R. Co. v. Ellis,* 165 U. S. 150; *In re Langford,* 57 Fed. 570; *County of San Mateo v. Southern Pac. R. Co.,* 8 Am. & Eng. R. R. Cases, 1.

*T. L. Stiles, F. R. Baker,* and *F. M. Carnahan,* for respondent.

PARKER, J.—This defendant, being the proprietor of a saloon situated in the city of Tacoma, in which he was licensed by the city to sell intoxicating liquors, was charged with selling intoxicating liquor in his saloon to one person to be drank on the premises by another person, in violation of the following ordinance of the city:

"An Ordinance to regulate the sale of intoxicating liquors in the city of Tacoma by the prohibition of treating, and to provide a penalty for the violation thereof.

"Be it ordained by the city of Tacoma:

"Section 1. Every licensed saloon in the city of Tacoma shall be conducted on the plan of 'No Treating;' and every owner of any such saloon shall post and keep posted in a conspicuous place within the bar of such saloon a white placard on which shall be printed in black letters not less than three (3) inches high, the words, 'No Treating Saloon.'

"Section 2. It shall be unlawful for the owner of any li-

censed saloon in the city of Tacoma, or any agent, servant or employee of such owner, to sell any intoxicating liquor to any person to be drank on the premises by any other person, or to deliver to any person, other than the one buying the same, any intoxicating liquor to be drank on the premises.

"Section 3. Every owner, or agent, servant or employee of such owner, of a licensed saloon in the city of Tacoma, who shall violate any of the provisions of this ordinance, shall, upon conviction thereof, be fined in any sum not exceeding one hundred dollars." Ordinance, No. 4,386.

Having been tried and convicted in the police court of the city, he appealed therefrom to the superior court for Pierce county, where he was again convicted, from which last conviction he has appealed to this court.

The questions raised upon this appeal relate only to the validity of the ordinance, the principal contention being that it is void for want of power in the city to enact it. Tacoma is a city of the first class, having more than 20,000 inhabitants, and as such has framed and adopted a charter for its own government in pursuance of § 10, art. 11, of the state constitution, and the act of the legislature of 1890 commonly called the enabling act, Laws 1890, p. 215; Rem. & Bal. Code, § 7494 and following. Section 5 of that act being § 7507 of Rem. & Bal. Code, provides:

"Any such city shall have power: . . .

"(32) To regulate the selling or giving away of intoxicating, malt, vinous, mixed or fermented liquors: Provided, That no license shall be granted to any person or persons who shall not first comply with the general laws of the state in force at the time the same is granted;

"(33) To grant licenses for any lawful purpose, . . .

"(34) To regulate the carrying on within its corporate limits of occupations which are of such a nature as to affect the public health or the good order of said city, or to disturb the public peace, and which are not prohibited by law, and to provide for the punishment of all persons violating such regulations, and of all persons who knowingly permit the same to be violated in any building or upon any premises owned or controlled by them; . . .

"(*36*) To provide for the punishment of all disorderly conduct and of all practices dangerous to public health or safety, and to make all regulations necessary for the preservation of public morality, health, peace and good order within its limits, and to provide for the arrest, trial and punishment of all persons charged with violating any of the ordinances of said city; but such punishment shall in no case exceed the punishment provided by the laws of the state for misdemeanors."

The city charter provides for the exercising of these powers by ordinance. It is argued by counsel for appellant that the powers given to the city by the provisions of the enabling act above quoted do not confer upon it the power of prohibition of the liquor traffic, and that the validity of the ordinance can be sustained only upon the theory that the city possesses the power of prohibition. The authorities cited by counsel seem to sustain the view that the power of absolute prohibition is not conferred by the power to regulate only, which apparently is the extent of the power given by the language of the enabling act. Black, Intoxicating Liquors, § 227; Woollen and Thornton, The Law of Intoxicating Liquors, § 278. This is conceded to be the law by counsel for the city, and they do not contend that the city possesses the power from any other source. So we need not further concern ourselves with the question of the city's power of absolute prohibition; which power, if existing, would seem to conclusively support the ordinance, so far as the city's power to enact it is concerned. We will, therefore, discuss the question from the viewpoint of the grant of power by the terms of the enabling act, expressing no opinion as to what power of prohibition the city may possess by virtue of the constitutional provisions enabling it to frame its own charter and to enforce local police regulations, the extent of its power from that source not being here discussed by counsel.

The problem for our solution then is, Does the power "to regulate the selling or giving away of intoxicating . . .

liquors," taken in connection with the power to license and the power to ordain police regulations as conferred by the provisions of the enabling act above quoted, give to the city the power to regulate the liquor traffic in the manner provided by this ordinance?

We are first confronted by the fact that the ordinance does, in a measure, restrain and prohibit the disposition of intoxicating liquor; and this it is insisted amounts to more than regulation, as that term is used in the enabling act. The word "regulate" seems to necessarily imply some degree of restraint and prohibition of acts usually done in connection with the thing to be regulated. It negatives the idea that all acts which would ordinarily be performed in connection therewith may be so performed without any restraint or prohibition whatever, and it seems to necessarily follow that some restraint upon the sale and giving away of liquor, as well as upon other acts in the conduct of the business which do not directly pertain to the disposition of the liquor, must fall within this power. In Black on Intoxicating Liquors, at § 227, that learned author, commenting upon the distinction between the power to regulate and the power to prohibit, adds: "But true regulation of the sale of intoxicants is not inconsistent with a partial or qualified prohibition." Justice Martin, speaking for the court of appeals of New York, in *Rochester v. West*, 164 N. Y. 510, 58 N. E. 673, 79 Am. St. 659, 53 L. R. A. 548, says:

"To regulate is to govern by, or subject to, certain rules or restrictions. It implies a power of restriction and restraint, not only as to the manner of conducting a specified business, but also as to the erection in or upon which the business is to be conducted."

In *Provo City v. Shurtliff*, 4 Utah 15, 5 Pac. 302, in construing the power of the city to regulate under a grant of power which was held not to give the city the power to entirely prohibit, the court observed:

"Under this statute, the power to license, regulate or re-

strain, is not questioned, and this power implies the power of *partial* prohibition—to incumber the sale with conditions and limitations, to hinder and prevent in degree, and to prescribe reasonable rules by which the sale of intoxicating liquors to persons, and at places, is to be governed, to the end that the abuse to which they are obviously liable, may at least in degree be prevented."

In the following cases where the power to regulate, or a general welfare clause only, was involved, ordinance regulations were held valid which in a measure restrained and prohibited the disposition of intoxicating liquor: *Richards v. City of Bayonne*, 61 N. J. L. 496, 39 Atl. 708; *Morris v. City Council of Rome*, 10 Ga. 532; *Baton Rouge v. Butler*, 118 La. 73, 42 South. 650; *State ex rel. Howie v. Common Council of Northfield*, 94 Minn. 81, 101 N. W. 1063; *Monroe v. Lawrence*, 44 Kan. 607, 24 Pac. 1113, 10 L. R. A. 520; *Ex parte Hayes*, 98 Cal. 555, 33 Pac. 337, 20 L. R. A. 701; *People v. Case*, 153 Mich. 98, 116 N. W. 558, 18 L. R. A. (N. S.) 657.

From these authorities, and others which could be cited, it seems clear to us that the mere fact that the ordinance in some measure prohibits the sale and giving away of intoxicating liquors in licensed saloons in the city does not render the ordinance invalid because of lack of power to enact it; since a limited degree of prohibition is apparently one of the methods of regulating the liquor traffic, recognized by law. This seems to reduce our problem to the question of the reasonableness of the ordinance.

In considering the question of the reasonableness of the ordinance, we must remember that we are here dealing with a general welfare power together with the specifically granted *power of licensing and regulating the selling and giving away of intoxicating liquors.* It is argued that the provisions of the ordinance are so unusual that we cannot assume that the legislature contemplated a regulation of this nature by the language of the enabling act above quoted, which is general only, and leaves the nature and extent of the

regulations which the city may make undefined. It is true that no ordinance of any municipality, no statute of any state, nor any decision of the courts, has come to our notice involving a prohibition against treating, though counsel for appellant say in their brief that anti-treating laws did exist for a short time in the states of Wisconsin and Nevada; and they call our attention to the doubts expressed by Professor Tiedeman in his work on Limitations of Police Power, at page 155, where, referring to these statutes he says: "These regulations are open to the constitutional objection of a deprivation or restraint of liberty, in a case in which no right has been invaded." We are not cited to the volumes where these laws may be found, nor advised of their exact nature. If they prohibited the giving to another of liquor as an act of hospitality under any and all circumstances, and were restrictions upon all such acts wherever committed, independent of the regulation of the disposition of intoxicating liquor as a business, there might be some plausible argument to support that learned author's suggestion touching their constitutionality. But we think it hardly likely that he intended to express the opinion that the police power is not sufficient to support a prohibition against treating in places licensed for the sale of intoxicating liquors. It is inconceivable that the police power will not support any and every regulation and restraint, when it will support absolute prohibition.

The question here, however, is not one of constitutionality, or of the right of the legislature to itself make such a regulation, or grant the power to make it to a municipality. But the question is, Is this ordinance so unreasonable as not to come within the power granted to the city of Tacoma? Now the mere fact that this is seemingly a new and unusual regulation is not conclusive, nor do we think it is even a very persuasive argument against the reasonableness of the ordinance. Every restriction upon the liquor traffic had a beginning somewhere at some time. It was only by the

awakening conscience of the race that the evils of the liquor traffic became recognized to the extent that it has become regarded as a proper subject of control under the police power. Under the old common law, a person was as free to engage in the disposition of liquor as a business as he was to engage in any other business. In Woollen and Thornton on The Law of Intoxicating Liquors, at § 323, the beginning of these regulations in England is interestingly mentioned as follows:

"It is true that brothels and gaming houses were at common law under all circumstances held to be nuisances, but ale houses and other places in which intoxicating liquors were sold to be drunk were not so held or regarded unless they became disorderly, and in such cases it was not the mere sale of the liquors which constituted them nuisances but it was the disorderly conduct therein; or, in other words, the disorderly manner in which they were conducted or kept, and in such cases it was immaterial whether the keepers thereof were licensed or unlicensed. The first general statute restricting and regulating the keeping of ale houses and tippling houses was passed by the British Parliament in 1552, and was the act of the Fifth and Sixth Parliament of Edward VI. This statute constitutes chapter 25, page 391, of the English Statutes at Large, 1540 to 1552. The preamble to this statute declares: 'For as much as intolerable hurts and troubles to the commonwealth of this realm doth daily grow and increase through such abuses and disorders as are had and used in common ale houses and other houses called tippling houses, it is therefore enacted by the King, our Sovereign Lord,' etc. At common law prior to the passage of this statute, any person had the right, without a license, to keep and maintain ale houses and tippling houses. Such business was not regarded as a public offense, but was considered and held to be a means of livelihood which one was free to follow."

The modern conception of the legal status of the liquor traffic in the United States is clearly expressed by Justice Field, speaking for the supreme court of the United States in *Crowley v. Christensen*, 137 U. S. 86, 91, as follows:

"By the general concurrence of opinion of every civilized and Christian community, there are few sources of crime and misery to society equal to the dram shop, where intoxicating liquors, in small quantities, to be drunk at the time, are sold indiscriminately to all parties applying. The statistics of every state show a greater amount of crime and misery attributable to the use of ardent spirits obtained at these retail liquor saloons than to any other source. The sale of such liquors in this way has therefore been, at all times, by the courts of every state, considered as the proper subject of legislative regulation. Not only may a license be exacted from the keeper of the saloon before a glass of his liquors can be thus disposed of, but restrictions may be imposed as to the class of persons to whom they may be sold, and the hours of the day and the days of the week on which the saloons may be opened. Their sale in that form may be abso-. lutely prohibited. It is a question of public expediency and public morality, and not of federal law. The police power of the state is fully competent to regulate the business—to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attendant with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils."

So far as the rights of appellant are concerned, we are not able to see that the restraint. placed upon his disposition of intoxicating liquor in his licensed saloon by this ordinance is any different in principle from the municipal ordinance regulations amounting in some degree to prohibition, such as are noticed and held to be valid in the decisions above cited; among which we find prohibitions against sales in licensed saloons during certain hours of the night, prohibitions against sales to women, limiting saloons to certain districts of the city, and limiting the number of saloon licenses to be granted in the city. Such regulations are clearly in a measure prohibitive, yet are sustained under grants of power to cities no broader than we are here dealing with, upon the theory that the acts prohibited are said to be conducive to

immorality and public disorder in the municipality, and are therefore such as it has a right under such a grant of police power to suppress by prohibitive regulations. The legislature, by the enabling act above quoted, not only gave to the city the power to "license" and "regulate" this particular business, but also gave the power to "make all regulations necessary for the preservation of public morality, health, peace and good order within its limits," but without specifically defining the extent or nature of such regulation. Clearly it must have been intended that the city could make regulations by ordinance relative to the liquor traffic in addition to those found in the general laws of the state and such as local conditions might suggest to the city authorities as appropriate and beneficial to the morals and good order of the people of the city. Otherwise, this grant of power would serve no purpose, since all the regulations of the general state law would be in force without the city's action.

It follows that the city authorities must have been intended to exercise some degree of discretion in determining the nature and extent of the regulations they should make. Now we must assume that they were of the opinion that the custom of treating in saloons was a source of many of the evils which flow from the retail liquor traffic. They are by no means alone in entertaining this view; since many of our people have cause to regard the custom of treating in saloons as one of the principal sources of evil which the public suffers from the disposition of intoxicating liquors. This being true, we cannot say that an ordinance which has for its purpose the prohibiting of such treating, is unreasonable as a regulation of the liquor traffic, when such ordinance is enacted by virtue of the power here given to regulate that specific business and also the general power to make regulations necessary for the preservation of public morality; unless we can say that there has been a clear abuse of discretion by the city authorities in the exercise of the power. The city authorities must of necessity, in the first instance, decide upon the

reasonableness of any such regulations, and their decision should be controlling upon the courts unless the unreasonableness of the ordinance is fairly free from doubt.

Mr. McQuillin in his exhaustive and able work on Municipal Ordinances, at § 186, observes:

"Judicial authority to declare an ordinance unreasonable is a power to be cautiously exercised. The rule is generally recognized that municipal corporations are *prima facie* the sole judges respecting the necessity and reasonableness of their ordinances, and hence the legal presumption is in their favor."

In the early case of *Mayor etc. of Mobile v. Yuille*, 3 Ala. 137, 36 Am. Dec. 441, 446, the court said:

"As, however, by-laws are the rules of action which the inhabitants of a place prescribe for their own government, there is a peculiar propriety in permitting them to be the judges of what rules are necessary and proper, and such is the constant, the invariable practice."

These views but reflect the spirit of the right of local self-government so highly prized by all English-speaking people, a right which this grant of power was intended to foster, and a right which, in this age of increasing enlightenment, should be extended rather than curtailed. We are of the opinion that the ordinance is not unreasonable.

Some contention is made by counsel for appellant which they seem to rest upon the supposed rights of the purchaser of liquor; it being argued that treating such as is here prohibited is an act of hospitality which has always been exercised by a free people. That argument could have been, and doubtless was, advanced in opposition to every regulation and restriction that was ever put upon the liquor traffic, at the beginning of such regulation. In our opinion it is of no weight whatever in support of a practice which becomes recognized as a source of evil and a menace to public morality and good order. Just as the right to engage in the liquor traffic is not an inherent right in any citizen, neither

is it an inherent right in any citizen to treat another in a licensed saloon which is under the control of the police power being exercised by a municipality as in this case. Whatever the right of the citizen may be elsewhere, he has no inherent right even to buy liquor at such a place.

Some contention is made that this ordinance is invalid because it is in effect an amendment, but not enacted as such, to the general license ordinance of the city of Tacoma, which contains many regulations and restrictions upon the liquor traffic, and is in violation of that provision of the city charter which requires that, in the amendment of an ordinance or section thereof, such amendment shall be accomplished by a new ordinance which shall contain the entire ordinance as amended and shall repeal the ordinance or section so amended. It will be noticed that this is an original ordinance in form, and does not purport to amend any ordinance. The argument seems to be that, since it provides additional regulations and restrictions upon the sale of intoxicating liquors, it is in effect an amendment upon the general ordinance upon that subject. We cannot agree with this contention. No authorities have been called to our attention indicating that such an ordinance is an amendment of a former ordinance when the former ordinance does not purport to cover the regulations embodied in the new one. We think there are no decisions so holding. Both ordinances can stand without in the least conflicting with each other.

It is finally contended that this ordinance is in violation of those provisions of the Federal and state constitutions which secure to the citizen his property, except as he may be deprived thereof by due process of law, and which guarantee to him the equal protection of the laws. The argument advanced is, in substance, that the offense defined by this ordinance in order to be committed must be participated in by the purchaser as well as the seller and that while the seller is to be punished therefor, the purchaser is not. This

is an argument that might be made against a great many laws and ordinances which prohibit the selling of intoxicating liquor and other commodities, except upon certain conditions, and which punish only the seller, when violated by him. No authority has been called to our attention holding that such laws are in violation of the Federal or state constitutional provisions here invoked. Indeed the act of selling and the act of buying are not in contemplation of law the same act; hence, it is not a case of making an act a crime when performed by one person and not a crime when performed by another. We think appellant cannot rightfully complain upon constitutional grounds, because he alone may be punished under the ordinance.

We conclude that the ordinance is a valid exercise of the power conferred upon the city by the provisions of the enabling act above quoted; that it was regularly enacted; and that it does not violate any of the constitutional rights of appellant, either state or Federal. The judgment is affirmed.

DUNBAR, C. J., CROW, and GOSE, JJ., concur.