HAWTHORNE, Justice
(dissenting).
The holding of the majority opinion is that the first provision in Article 19, Section 8, of the Constitution of 1921 is not self-operative, and that “ * * * there is delegated to the Legislature, and to the Legislature alone, the power to suppress gambling, and to determine how, zvhen, where, and in what respects gambling shall be prohibited or permitted.” (All italics mine.) In support of this holding there are cited three cases decided by this court, City of Shreveport v. Maloney, 107 La. 193, 31 So. 702, State v. Austin, 142 La. *80 384, 76 So. 809, and State v. Mustachia, 152 La. 821, 94 So. 408, 409. Notwithstanding anything said to the • contrary in the majority opinion, a reading of these cases will show that not one of them is authority for the proposition that Article 19, Section 8, delegates power to the . Legislature to determine how, when, where, and in what respects gambling shall be permitted.
I do not think that anyone would be so naive as to say that pari-mutuel betting or the bookmaking form of betting on horse racing is not gambling. To say that .such forms of betting are not gambling would be so foolish as to insult the intelligence of any normal human being. The majority opinion recognizes that these forms of betting are gambling, but then says that the provision of the Constitution delegates the power to the Legislature to determine how, when, where, and in what respects gambling shall be permitted.
1 The constitutional provision declares: “Gambling is a vice and the Legislature shall pass laws to suppress it.”
Webster’s New International Dictionary defines the word “suppress” as “To put down or out of existence by authority, force, or pressure; to quell; to crush; to subdue; to force into impotence or obscurity; to extinguish by prohibiting, dissolving, etc. * * * Furthermore, in State v. Mustachia, supra, one of the cases cited and relied on-in the majority opinion, this -court clearly defined the word “suppress” as used in the constitutional provision under consideration, thus: • “ * * * the word ‘suppress’ is equivalent to prohibit, put down, or end by force * *
Under this definition the constitutional provision would then read: “Gambling is a vice and the Legislature shall pass laws to prohibit it.”
Since pari-mutuel betting or the bookmaking form of betting is gambling, we might paraphrase the provision of the Constitution, as did counsel for the appellants, to read: “Pari-mutuel betting or the bookmaking form of betting is a vice and the Legislature shall pass laws to prohibit it.”
How the majority of the court can hold or say that this provision of the Constitution, which is a mandate to the Legislature to pass laws to suppress or prohibit gambling, delegates power to the Legislature to permit gambling is beyorid my understanding. By such a holding the majority of the court distorts the meaning of the provision as written and, in effect, is rewriting the provision without any authority or right to do so, making it now read: “Gambling is a vice and the Legislature shall pass laws to prohibit or permit it.”
Now let us examine the pertinent provisions of the Racing Commission statute, R.S. 4:141 et seq., which the majority of the court says is constitutional. This statute creates, and defines the powers and duties of, the Louisiana State Racing Commission, and R.S. 4:148 provides:
*82 “ * * * ' The commission shall make rules governing, permitting, and regulating the wagering on horse races under the form of mutuel wagering by-patrons, known as the ‘pari-mutuel wagering’ and the ‘bookmaking form of wagering,’ both of zvhich methods are legal. Only those persons receiving a license from the commission may •conduct these types of wagering, and shall restrict these forms of wagering to a space within the race meeting grounds. * * * ”
The question for decision is: Has the Legislature by enacting this statute com-plied with the constitutional mandate, and does this law have for its purpose the suppression or prohibition of gambling? The answer is obvious, for the statute not only declares that pari-mutuel betting or gam bling is legal when conducted within the enclosure by a licensee, but goes further and requires one operating such a business to obtain a license to conduct such gambling. Thus it will be seen that instead of suppressing or prohibiting gambling, what the Legislature here is doing is encouraging, promoting, inducing, fostering, licensing, and legalizing gambling. If this is not contrary to the ¡mandate plainly ¡expressed in the Constitution, then .1 .confess I am unable to understand the English language. •: ... ¡ .
This provision of the Constitution, as •argued by counsel, sets one course, and only one course, for the Legislature — that is, that it may enact laws to suppress or prohibit gambling. This prescribed course is a one-way street: If the Legislature elects to pass laws relative to gambling, these laws must be enacted for the purpose of suppressing or prohibiting gambling; the Legislature cannot turn the other, way and enact laws permitting- or legalizing gambling.
In two of the very cases relied upon by the majority in its holding, this court said:
“ * * * the Legislature might not ■ license any sort of gambling * * State v. Mustachia, supra.
“* * * To the legislature alone the power is delegated of legislating against gambling. * * * ” City of Shreveport v. Maloney, supra.’
If the majority of the court is correct in saying that the statute insofar as it expressly permits and legalizes gambling in an enclosure does not violate the mandate expressed in the Constitution, then there is nothing to prevent the Legislature from adopting statutes which legalize,’ for instance,- the conducting" of a banking, -dice, or crap game in an enclosure, I .cannot •.agree to any such proposition.
I am of the opinion that the statute insofar as it expressly, .licenses and legalizes *84 gambling in an enclosure — and this is exactly what it does — is unconstitutional, and that consequently this form of gambling is prohibited and made unlawful by Article 90 of the Criminal Code. Because this form of gambling is prohibited by the Criminal Code, it is a nuisance per se, and plaintiffs are entitled to the injunctive relief for which they pray.
88
I am mindful, of course, that various agencies of the State, including charitable and educational institutions, benefit financially from the funds received by the State from the licensees of race tracks, where pari-mutuel betting is conducted, although the licensees themselves are private corporations which realize large sums of money from this form of gambling. But, if the people of Louisiana desire to continue the receipt of this revenue from this form of gambling, then they, the people — and not this court — , have the power to remove from the Constitution the mandate which declares that gambling is a vice and the .Legislature shall pass laws to suppress it, and thus leave the Legislature free to pass laws to prohibit or permit such gambling. Nevertheless,. as long as this mandate is in the Constitution, in my opinion it is the duty of -this court to see that the legislature does not violate it.
I' respectfully dissent.