(48 South. 932.)

No. 17,460.

STATE v. SCHEFFIELD et al.

(March 15, 1909.)

1. GAMING (§ 63*)—CRIMINAL RESPONSIBILITY —BETTING ON HORSE RACES.

The intention of Act No. 57 of 1908 (Laws 1908, p. 64) was to put an end to wagering as conducted on race tracks.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 120; Dec. Dig. § 63.*]

2. DEFENSES—BOOK.

Were the theory correct (under the statute), and "betting book" were the only book against which the statute aims, it would afford small comfort to the defense.

3. GAMING (§ 73*)—CRIMINAL RESPONSIBILITY — BETTING ON HORSE RACES — "BETTING BOOK."

It would be difficult to separate the "betting book" from the wagering, or the whole wagering plan as it was conducted. The words "betting book," as used, connected with the other devices, is broad enough to include the whole scheme of betting.

[Ed. Note.—For other cases, see Gaming, Dec. Dig. § 73.*]

4. INTENTION OF STATUTE.

The statute in express terms includes betting books or other devices, showing that betting as conducted must come to an end.

5. PERSONS RESPONSIBLE.

The "agents" and "employés" of the betting combination, against which the statute aims, have a certain and definite meaning.

6. GAMING (§ 73*)—CRIMINAL RESPONSIBILITY —BETTING ON HORSE RACES—PERSONS RESPONSIBLE.

The "owners" (words of the statute) are those who conduct the betting by using "betting books," "sheets," "tickets," and "other devices"; and the statute includes "agents" and "employés" within its prohibitive terms, and those who are interested in the "book maker's book."

[Ed. Note.—For other cases, see Gaming, Dec. Dig. § 73.*]

7. GAMING (§ 85*)—CRIMINAL RESPONSIBILITY —INFORMATION—SUFFICIENCY.

The information is substantially a reproduction of the words of the statute.

[Ed. Note.—For other cases, see Gaming, Dec. Dig. § 85.*]

8. STATUTES (§ 118*)—EXPRESSION OF SUBJECT IN TITLE.

The object expressed in title and body of the act is the same.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 158; Dec. Dig. § 118.*]

9. STATUTES (§ 181*)—CONSTRUCTION—INTENT.

Ingenious distinctions in construing the language of statutes and close analysis of sentences are engaging. They cannot be held controlling, when the intention of the lawmaking power is evident enough.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 259; Dec. Dig. § 181.*]

(Syllabus by the Court.)

Appeal from Criminal District Court, Parish of Orleans; Frank D. Chrétien, Judge.

Robert M. Scheffield and another were convicted of illegal betting on horse races, in violation of Act No. 57, p. 64, of 1908, and they appeal. Affirmed.

Thomas C. Ryan, Adams & Otero, and E. Howard McCaleb, for appellants. St. Clair Adams, Dist. Atty., and Warren Doyle, Asst. Dist. Atty., for the State.

BREAUX, C. J. Illegal betting on horse races is the offense with which the defendants are charged, and of which they have been found guilty and sentenced to pay a fine of $350 and to seven months' imprisonment in the parish prison.

On appeal to this court, their complaint is that the verdict and sentence are illegal, as they have committed no act for which they

should be condemned under the terms of the law.

The information under which they were found guilty charged them with having engaged in promoting and aiding in operating a betting book upon a horse race which was about to take place at the City Park race track.

The title of the act under which the information was filed is indicative of the purpose of the law: To prevent gambling and to provide a penalty for gambling.

The act, following the title, prohibits any one from operating a betting book. To quote literally:

"To prohibit any person as 'agent,' 'owner,' 'officer,' or 'employé' from engaging, encouraging, promoting, aiding or assisting in the operation of a betting book" upon horse races, or in "selling auction pools upon any horse race."

A demurrer was filed and overruled.

Subsequently a motion was filed, urging that the information was vague. Defendants moved for a bill of particulars.

The court allowed the motion.

The defendants complain of the bill of particulars as being a shift from the position taken in the information, which charged that "defendants" did engage in promoting and in aiding in the operation of the lottery book, while in the bill of particulars it is charged that they directly operated the betting book, an act not prohibited by the statute, nor described in or named in the information.

The defendants further urged that the description of the offense in the bill of particulars is not prohibited by the statute.

The bill of particulars sets out in the first paragraph that the defendants are the agents or employés of the owners of said betting book.

The second paragraph of the bill of particulars sets out that defendants, by receiving and recording bets upon horses whose names were exhibited and against whom odds were laid in said betting book, were, at the same time, delivering to the individual bettors tickets which were evidence of the amount and conditions of their bet.

In another paragraph of the bill of particulars, the state sets out that the "betting book," with the operation of which defendants are charged, consists of the following paraphernalia:

Of a slate and board, on which the names of the horses were written.

And the bill of particulars further sets out or refers to all that is necessary in keeping account of the "bookmaker's" business.

It also makes special reference to the tickets given to the individual bettor as evidence of his bet; also to the sheet upon which is recorded the number of each bet.

The clear shift urged by defendants:

That there was in some respects a change of position by the state in the bill of particulars from what the charge is in the information. That in the former (the bill of particulars) the prosecution sought more particularly to charge the defendants with having not only assisted in the betting and in promoting the game of chance, but charged that they were actually engaged in betting or gambling. That in the latter (the bill of information) the defendants were only charged with having "aided and assisted" in the betting.

In considering this point, we went back to the information, and there did not find that defendants are charged exclusively with aiding and assisting. The information is not as limited in its terms as defendants urge. "Engage in promoting," the words used in the information, go beyond mere assisting in the operating of a "betting book" upon a horse race. It follows that defendants are charged, not only with having assisted in the betting, but that they were charged in the information with having actually en-

gaged in betting, or its equivalent, against the terms of the statute.

The next proposition urged by defendants is that they are not among those against whose acts the statute is aimed.

The defendants, to the end of sustaining their proposition, through learned counsel invite attention to the different acts on the statute book regarding gambling. They urge that, which is true, generally persons denounced in all acts regarding gambling and acts similar of a date prior to the Act No. 57, p. 64, of 1908, are the owners of the places where the gambling is done.

Generally in these laws the "subject" is the owner, proprietor, or "agent."

We have read the quotations in the elaborate brief of learned counsel from these acts.

Taking the facts above stated—that is, that the "owners" of the place where the wagering is done under prior laws is nearly always the person pointed out as the initial point—they arrive at the conclusion that Act No. 57, p. 64, of 1908, the one before us for interpretation, is aimed against "owners" and their "agents," "officers," and "employés" as the offending persons; that is, that the words "agents," "officers," "owner," and "employés" relate to the owner—that is, the owner of the property named, room, hall, horse, inclosure, path, track, road course— and their "agents" and "employés"; that the "owner" is the person intended.

We can only say in answer that the statute in question provides that those who promote and encourage, aid, and assist in operating the betting prohibited in or upon the property are the offenders, without regard to the "owner."

Learned counsel in their able defense gave an importance to "owner" with which we are not able to agree.

If we were to concede to them this point, their conclusion is then logical enough. We do not attach the importance they do to the word "owner." Without reference to that word, it is possible to violate the statute by any one coming within the meaning of the word used; that is, the "agent"—the employé—is singled out as a possible offending party, without reference to "owners" of the property; that is, the agent or employé of the "book," whether he is owner of the property or not.

Taking a practical view of things, we propound a question: Why could not the statute punish those who "encourage," "promote," or aid in operating a betting book, and those who are their "agents" and "employés" as well?

But, even if we were to take the view propounded by learned counsel in regard to the "betting book," it seems to us that it would be reasonable and logical to hold that this "book" forms part of the betting process which is prohibited. It would then be possible to hold that the betting to which the statute has reference begins at the booth or stall erected on the track, and would include the "betting book," without which there can be no such complete betting as that denounced by the statute.

From that point of view, the law prohibits certain named persons from operating a "betting book." It is then to be considered part of the act made illegal. The "betting book" is denounced as an illegal mode of betting, and by the terms of the statute it includes the whole scheme of betting on horse races as conducted at the time.

The able counsel for defendants state in their elaborate brief that the practice of making bets on credit is an evil great enough to justify legislative action for its suppression

We can only say in answer this is the effect of the statute; but it does not end there. The statute also aims at betting as conducted on a cash basis.

But again, as to this betting book:

We have followed the very able counsel

in their ingenious defense to this point. We take up the subject as we understand was the intention of the Legislature. We precede our statement upon the subject with reference to the lexicographers and those who have given to the meaning of words special study.

"Betting," the "layer entries," and other similar definitions:

In its broader sense "the betting book" is that book which enables the professional bettor to carry on his business. We construe it literally. It refers to a "betting book" used in promoting the race. It includes the "book," the "making" book, and the book-maker. James v. State, 63 Md. 265; Russell on Crimes (Ed. 1896) vol. 1, p. 473.

We think we are justified in reaching that conclusion by the words of the statute, "or any other device," which, in our opinion, includes betting books as before stated; that is, that it is a book kept for registering bets upon the result of the race as operated on the race course. It includes all property or interest in these books.

We return for a moment to the bill of particulars, which is referred to a second time by learned counsel in their brief just a few pages before the end of it.

We will at once state, without stating the principal objection of defendants, that the offense is charged with the degree of certainty required; that it gives a description of the whole paraphernalia in use, the tickets and everything else connected with the betting, and sufficient enough to inform the defendants to place them on their trial.

The learned counsel have directed the force of their logical argument from their standpoint to the title of the statute, and urge that the object of the law is not expressed in the title of the act.

The title reads:

"To prohibit gambling on horse races by the operation of betting books, French mutual pooling devices, auction pools or any other device, and to provide penalties for the violation of the provisions thereof."

The act prohibited in the statute relates to gambling and to "betting books" and to horse races to the extent only that they come within the gambling denounced by the statute. The title of the act is complete enough to indicate the object.

Now as to aleatory contracts: While aleatory contracts, as urged by counsel for defendant, are still known to the laws of this state, the betting denounced by the statute is not. In the nature of things, laws regarding aleatory contracts are repealed to that extent, and there is therefore no merit in the contention that this is an aleatory contract protected by the laws.

Horse racing has a history. It goes back to ancient times. The taste for horses and the raising of horses has been a trait of the English character since many years. Derby Day and the Oaks at Epsom are great days among the English people. At one time in England horse racing was not interesting to the general public.

In France, years ago, the government and the governing classes were much concerned on account of the extravagant betting on horse races and the ruin it occasioned among the bettors.

The bettors' trouble came to an end at the outbreak of the Revolution of 1793. It has recovered its influence since, but never to an extent to give annoyance.

In this country horse racing has its record. Prominent men have given them encouragement. In argument at bar and in the brief, counsel interestingly refer to the horse racing of the past.

It is not for us to applaud the past, not to criticize the present. The statute is the expression of the lawmaking power. It must be obeyed.

We have given our most careful attention to the interpretation of the statute, to the de-

cisions, and the text of writers on law cited by learned counsel for the defense. We have also considered the analysis learned counsel made of the statute, and we have deliberated over the rules of grammatical construction invoked. Reasoning from the premises of the defendants, they are, perhaps, persuasive; but they do not explain away the second, or the alternative, part of the statute, which reads as follows:

"Or shall by any other device encourage, promote, aid or assist any person or persons to bet or wager upon a horse race or races run, or trotted or paced within this state or elsewhere."

And less do they explain away the first part of the statute expressive, further, of the intention.

It only remains for us to affirm the judgment.

The law and the evidence being in favor of plaintiff, and against defendants, the judgment appealed from is affirmed.

LAND, J. I concur in the result.