COUNTY COURT—NASSAU COUNTY,

June, 1913.

## THE PEOPLE v. "LAUDE," "S. ELLIS," "CAPTAIN WALKER" SOMETIMES CALLED "WALLIE FESSENDEN," "SCOTT," "MAHONEY," JOSEPH PARDOW AND ED. WILSON.

(81 Misc. 256.)

GAMING *—"BOOKMAKING" DISTINCT FROM MERE MAKING AND RECORD-ING OF BETS—WORDS "WITH OR WITHOUT WRITING"—PENAL LAW, § 986.

"Bookmaking" is distinct from the mere making and recording of bets, and the words "with or without writing," inserted in section 986 of the Penal Law by chapter 488 of the Laws of 1910, did not change the fundamental requirement that to constitute an offense thereunder there must be bookmaking as it has always been understood.

To sustain an information charging a violation of said section as so amended there must be evidence of such acts and conduct of the defendants as show that by their actual practices they belong to the class of professional gamblers called bookmakers, and where the testimony of detectives, who refer to the defendants as "book-makers," a mere conclusion of the witnesses, fail to show such acts and practices as would authorize a finding that there is probable cause to believe that defendants have committed the offense charged, the proceeding must be dismissed.

PROCEEDING to determine whether there is reasonable ground to believe defendants have been guilty of the crime of book-making within the meaning of section 986 of the Penal Law.

*Charles N. Wysong*, district attorney, for the people.

* See Notes, vols. 6–225; 28–207.

NIEMANN, J.　The sole question in this proceeding is, whether from the facts stated by the prosecutor and his witnesses there is reasonable ground to believe that the defendants named in the information have been guilty of the crime of bookmaking within the meaning of that term as used in section 986 of the Penal Law.

What is bookmaking?　Judge Haight, in People ex rel. Lichtenstein v. Langan, 196 N. Y. 260, 264, defined bookmaking as follows: "The term 'bookmaking' originally indicated a collection of sheets of paper or other substances upon which entries could be made, either written or printed." Prior to the enactment of the Hart-Agnew Law (Laws of 1908, chap. 507) bookmaking was conducted upon the race-tracks of this state in the following manner: The bookmaker prepared a slate upon which was marked the odds he was willing to lay against the various horses entered in the race. He would then stand upon a platform, hold his slate in his hand so that it could easily be observed by the people who gathered around him, and solicit bets from the general public. Those who were seeking to bet would, if the odds quoted were to their liking, place a bet upon the horse of their selection. The entry of this bet was made by the bookmaker's clerk who stood or was seated next to him. The manner of entering such bets was that the clerk would record upon sheets of paper the number of the admission tag held by the bettor, the amount of the money bet at the odds quoted, and the position in which the horse was played.

This practice of betting on horse races is what was known at that time as bookmaking, and it was this very practice of bookmaking that the legislature sought to stamp out by enacting chapter 507 of the Laws of 1908. As stated in the opinion of Judge Haight (p. 265): "The ordinary bookmaker is a person who follows the races and becomes fully informed with reference to the skill, speed and endurance of the horses that

are entered for races. These horses are taken from one meeting to another of the various racing associations, and thereby the bookmakers are enabled to prepare a list of the horses entered for a race, with the odds so arranged as to percentages as to give them a profit whichever the winning horse may be. These schedules are written out and either posted or circulated by the clerks or agents of the bookmaker among the persons in attendance upon the races and their bets solicited, and when a customer is found he is given a check indicating the horse and amount upon which he has placed his money. This was the scheme under which bookmakers were enabled to induce men, women and persons of immature years to part with their money, thus enabling the bookmaker to reap great profits out of the public and to become the chief supporters of the races. This is the evil which the legislature sought to prevent by the enactment of the Hart-Agnew bill, chapters 506 and 507 of the Laws of 1908."

The information in the Lichtenstein case did not allege nor was there any claim made by the district attorney that the laying of the odds and publishing the same was by any written or printed instrument, but that it was oral, so that the question presented to the court was whether the laying of odds and orally announcing them constituted bookmaking within the meaning of the statute. The court held that these acts did not constitute bookmaking, but it said, in speaking of what the term " bookmaking " means (p. 264) : " But the term has been used in many ways, and in determining its meaning as used in this statute, we must consider the evident purpose and intention of the legislature in enacting the provision in question, giving to the term its ordinary and accepted meaning as it was understood at that time."

The meaning of the term " bookmaking " as it was understood at that time was this system or practice of gambling by writing or printing odds upon a slate or sheet of paper, solicit-

ing bets from the general public, and recording the same, and it was the evident purpose and intention of the legislature in enacting the Hart-Agnew Law to prohibit this particular practice. It was not the intention of the legislature to prohibit the laying of odds and orally announcing them, for that was not considered *at that time* bookmaking. There being, therefore, in the Lichtenstein case no allegation in the information, or claim by the district attorney, that the defendant did prepare and write quotations of odds on paper or other substance, solicit bets and record the same, the crime of bookmaking was not charged within the meaning of that term as it was understood at that time.

In People v. Lambrix, 204 N. Y. 261, 27 N. Y. Crim. 26, the defendant was indicted in March, 1910, for bookmaking. The evidence showed that he made bets with certain persons on a horse race. There was no evidence to show that he recorded or registered a bet in any other way than by receiving a memorandum made by the party with whom he bet. The court said (p. 264): " It is to be borne in mind not only that the offenses with which the defendant was charged were committed prior to the amendment of the Penal Law making bookmaking and poolselling, with or without writing, a crime (L. 1910, ch. 488), but that the only question submitted to the jury was whether the defendant had recorded or registered bets. That making a bet or wager unaccompanied with record or registry was not at the time of this transaction a crime, was decided by this court in People ex rel. Lichtenstein v. Langan (196 N. Y. 260, 24 N. Y. Crim. 105)."

In order to overcome this limitation and to prohibit bookmaking no matter how conducted, the legislature enacted chapter 488 of the Laws of 1910, which prohibits a person from engaging in bookmaking, with or without writing.

This brings us then to the question: What is now bookmaking? Bookmaking as it now exists is not materially dif-

ferent from bookmaking as it existed prior to the Hart-Agnew Law, but we may now distinguish two kinds of bookmaking, written bookmaking and oral bookmaking. The former was prohibited by the Hart-Agnew Law, while the latter was not. The latter, however, by the amendment of 1910 is now also prohibited.

Ordinary betting, even if repeated from day to day, is not bookmaking. The statutes and the decisions have made a clear distinction between the person who transacts business as a professional gamester, based upon a scheme and plan known as bookmaking, and the man who makes a bet or a series of bets in the ordinary way. People ex rel. Lichtenstein v. Langan, *supra*. In this case the scheme and the vice of bookmaking are pointed out. The words " with or without writing," inserted in the Penal Law by chapter 488 of the Laws of 1910, did not in any way change the fundamental requirement of the statute that to constitute the offense there must be bookmaking as it has always been understood. It may now be oral bookmaking, if that term may be employed, that is, bookmaking without writing—but the evidence must show that the accused belongs to the class of common gamblers, professional gamesters—whose operations are conducted upon the scheme known as bookmaking. " Bookmaking " is distinct from the mere making or recording of bets. People ex rel. Sturgis v. Fallon, 152 N. Y. 1, 12 N. Y. Crim. 273.

The operatives of the Burns Detective Agency in the course of their testimony referred to the defendants as bookmakers—but a mere designation by the witnesses of these men as bookmakers has no legal force; it is a mere conclusion of the witnesses. There must be evidence of such acts and conduct of the defendants as show that by their actual practices they belong to the class of professional gamblers called bookmakers. The evidence of these witnesses fails to show such acts and practices as would authorize a finding that there is probable

cause to believe that the accused persons have committed the offense of bookmaking and therefore the court is unable to follow them in their conclusion that the defendants are bookmakers.

What these defendants did constituted, no doubt, a form of gambling; but it must be borne in mind that not every form of gambling is prohibited in this state. Lyman v. Shenandoah Social Club, 39 App. Div. 459. In fact, the Constitutional Convention of 1894, by an overwhelming vote, refused to make such a sweeping prohibition. Proceedings Constitutional Convention 1894, vol. VI, pp. 2585, 2601. Here we are dealing with a specific and distinct form of gambling, which consists of certain specific acts distinguishing this form of gambling from every other form of gambling and specifically designated in the statute as bookmaking. The information in this case charges that particular statutory offense, and, as the evidence falls short of establishing the crime alleged to have been committed, the proceeding must be dismissed.

Proceeding dismissed.