SOMMERVILLE, J.
Defendant appeals from a judgment of conviction for gambling by orally operating a betting book on a track in tbe parish of Jefferson, where a horse race was being run.
The evil of gambling is noticed in the Constitution, which declares it to be a vice, and the Legislature is therein directed to pass laws to suppress it; and to the courts is given the authority to execute such laws by enforcing the penalties therein imposed for their violation.
There are many laws against gambling; and in 1904 the Legislature passed Act No. 127, p. 291, to suppress gambling on races in pool rooms and turf exchanges, where the evil was notorious and unquestioned. City of Shreveport v. Maloney, 107 La. 193, 31 South. 702; State v. Maloney, 115 La. 498, 512, 39 South. 539; Shreveport v. Schulsinger, 113 La. 9, 36 South. 870, 2 Ann. Cas. 69.
Gambling on or near race tracks or courses had become flagrant, obnoxious, and dangerous to public morals, and the Legislature in 1908 passed act numbered 57, p. 64, to suppress it, by penalizing the gambler who operated a betting book upon any track or course where any kind of a horse race or races were being run, trotted, or paced.
The act does not seek to punish gambling on horse racing between individuals who bet with • the bookmaker or his assistants, or those who bet between themselves. The law refers to the professional gambler, the bookmaker, and his assistants who operate a betting book; to those who operate a French Mutual pooling device; to those who sell auction pools upon any horse race; and to those who use any other device for such purpose.
Act No. 57 plainly states its object in the title'thereto, which reads:
“An act to prohibit gambling on horse races by the operation of betting books, French Mutual pooling devices, auction pools, or any other device, and to provide penalties for the violation of the provisions thereof.”
And the act provides:
“That any person who, either as agent, owner, officer, or employs, shall, in any room, hall, house, or any inclosure, or upon any track, path, road, or course, Whether within or without an inclosure, in this state, engage in encouraging, promoting, aiding or assisting in the operation of a betting book, or a French Mutual pooling device, upon any kind of horse race or races, or in selling auction pools upon any horse race which are hereby declared to be gambling, or shall, by any other device, encourage, promote, aid or assist any person or persons to bet or wager upon a horse race or races, run or trotted or paced, within this state or elsewhere, shall be guilty of a misdemeanor and upon conviction, shall be fined not less than one hundred dollars nor more than five hundred dollars and imprisoned for a period of not less than six or more than twelve months.”
Tbe first count in tbe information charged that tbe defendant—
“did unlawfully as owner, within an inclosure, engage in encouraging, promoting;, aiding, and assisting in the operation of a betting book upon a horse race and horse races upon a race track in the parish of Jefferson.”
Defendant called for a bill of particulars, which was furnished, reading as follows:
“Now into court comes the district attorney, and in answer to the motion made by the defendant that he furnish him particulars of the charges now pending against him in writing, files the following particulars:
“Answer to No. 1. Within an inclosure known as the Suburban Race Track or Suburban Park, located at McDonoughville, in the parish of Jefferson, state of Louisiana, that defendant, as owner, did, on days set out in the information filed herein, operate a betting book in the following manner:
“That the said Austin, defendant, has been known as a professional racing man; that he walked at will or stood on the grounds of the Suburban Race Track or Suburban Park, on Saturday, May 19, 1917, where horse races were conducted; that he had in his possession paraphernalia, to wit, a racing program, upon which *387 was printed the names of the horses entered in the races, together with the names of their drivers ; that the said Edwin Austin had in his possession money for the purpose of betting on said races; that one by the name of Hart, whose first name is Frank A. the district attorney is informed, walked up to the said Austin accused herein and asked him if he would bet against Walter McKinney (a horse entered in the race), and, if so, at what odds; that the said Austin answered that he was betting 2 to 1 against Walter McKinney; that the said Hart then wrote on a slip of paper and offered $10 on Walter McKinney at odds of 2 to 1, at the same time proffering the said Austin $10 and the said slip of paper with Hart’s name signed thereto, both of which the said Austin placed in his pocket; that the said Austin then took several more bets on the same horse from various persons whose names to the district attorney are unknown at odds from 2% to 3 to 1 under the same process; that the said Austin took several bets with persons whose names are unknown to the district attorney in the same manner on a horse called Fair Play and a horse by name of Kremlin Clay at varying odds; that said Austin was asked if he would bet against a horse by name of Derby King, but answered that he was betting on said horse Derby King himself, and the said Austin did actually bet on the said horse several times at varying odds, with several parties whose names are unknown to the district attorney, and that at the conclusion of the race the said Austin paid off to the persons having bet on the winner Walter McKinney, taking a receipt on the bettor’s original slip of paper, hereinabove referred to; that the said racing program referred to hereinabove was purchased by the said Austin from the association conducting the racing.
“Answer to count No. 2. That the whole scheme of betting as conducted by the said Austin and as is particularly set out in the foregoing paragraph constitutes the device referred to in the information filed herein.”
Defendant thereupon alleged that the information and bill of particulars constitute no offense known to the law, and asked that he he dismissed and discharged of said information and charge. The motion was overruled, and a bill of exceptions was reserved to the ruling of the court.
The defendant was specifically charged in the hill of information, in the language of the statute, with having engaged as owner in encouraging, promoting, aiding, and assisting in the operation of a betting book upon a horse race and horse races run upon a named race track.
The charge is entirely within the meaning of the language of the act of the Legislature, which denounces the commission thereof to be gambling on a race track. The information was sufficient to inform defendant of the offense he was charged with having committed, and for which he was to be tried.
The bill of particulars sets out a somewhat different and more restricted charge. It appears to contradict the charge in the bill of information in certain particulars. It does not show that the defendant was operating a betting book on a horse race, as that term was understood at the time of the passage of Act No. 57 of 1908. It shows that he had certain paraphernalia, to wit, a printed racing program with the names of the horses entered in the race, together with the names of their drivers; and that appears to have been the only booli, paper, or paraphernalia which he had. The bill of particulars states that:
The bettor, Hart, “wrote on a slip of paper and offered $10 on Walter McKinney at odds of 2 to 1, at the same time proffering the said Austin $10 and the said slip of paper with Hart’s name signed thereto, both of which the said Austin placed in his pocket.”
The bill of particulars then proceeds to say that he had similar transactions with others; but it is not shown that the defendant posted odds, or had a list, or made any registry or entry of any kind. If it were to be held that the slip of paper which was written by Hart was the entry or registry of a bet on a horse race, then 1-Iart -would have been the bookmaker, and not Austin. 1-Iart was not the clerk or assistant of Austin. The intention of the Legislature was clearly to punish the professional gambler who operated on race tracks by betting on horse races, and not the bettors who made the bets.
The act denounces the operation, or the encouraging, promoting, or assisting in the operation, of a betting book, or a French Mutual pooling device, upon any kind of *389 liorse race or racing, or in selling auction pools upon any horse race, which is declared to he gambling, or who shall encourage, promote, aid, or assist any person or persons to bet or wager upon a horse race or races by any other device. This is the mode adopted by the Louisiana Legislature to prohibit gambling on horse races in the state of Louisiana.
The only question before the court now is whether defendant was gambling by operating a betting book on the occasion referred to in the bill of information, as amended and restricted by the bill of particulars. In 7 O. J. a betting book is defined to be:
“A book kept for registering bets on the result of a race as operated on a race track.”
And there is therein noted a decision of this court in State v. Scheffield, 123 La. 277, 48 South. 932, which holds:
“In a broader sense, ‘the betting book’ is that book which enables the professional bettor to carry on his business. We construe it literally. It refers to a ‘betting book’ used in promoting a race. It includes the ‘book,’ the ‘making book,’ and the bookmaker.”
And this is what was indicated by the Legislature in the use of the term in the act of 190S.' The term may have been used in many ways, but in determining its meaning as used in this statute we must consider the evident purpose and intention of the Legislature in enacting the provision in question, giving to the term its ordinary and accepted meaning as it was understood at that time.
“The courts will not apply a penal statute to a case not within the obvious language employed, even though it be within the mischief to be remedied. What the Legislature through inadvertence or otherwise omits from such a statute the courts cannot supply; their duty being to interpret, not to amend, the law.” Breffeihl’s Case, 130 La. 904, 58 South. 763, 40 L. R. A. (N. S.) 535.
. It is true that a bookmaker may retain in his memory the odds when only three or four horses are entered in a race, so that he could state the odds orally, as the statement of facts in this case shows Austin to have done. And that was bookmaking, and he was charged with gambling by operating a betting book on a horse race. The bill of particulars shows that the defendant was bookmaking without any writing. Writing may not be of the substance of bookmaking; and, if resorted to, it may be a mere incident.
Bookmaking orally, or by writing, is public gambling by quoting and laying insidious odds to a number of people; but it was the written bookmaking, in our opinion, which the Legislature denounced in the statute of 1908.
in 1908 the bookmaker operated under permission from the racing association; and he operated his betting book by posting odds, using lists, and registering the bets. And it is that bookmaker and his clerks and assistants who fall within the obvious meaning of the language of the act. And the bookmaker, like defendant, who operated without permission from the racing association, and while standing near the track, without a book, list, posting, etc., is not within the terms of the act.
Under a somewhat similar provision of law in New York, where bookmaking “with books, papers, paraphernalia, or apparatus, for the purpose of registering or recording bets or wagers upon the result of any trial or contest of skill of man or beast,” etc., was denounced, and where the district attorney stated in the information by him, in which he charged the relator with laying odds and publishing the same in numerous bulletins, he did not intend to charge that such laying of odds and publishing was by any writing, but that it was oral, it was held that the information filed by the district attorney failed to allege acts which constituted the crime of bookmaking, as that term was commonly understood at the time of the passage *391 of the act. People ex rel. Lichtenstein v. Langan, 196 N. Y. 260, 89 N. E. 921, 25 L. R. A. (N. S.) 479, 17 Ann. Cas. 1081.
In a subsequent case (People v. Lambrix, 204 N. Y. 261, 97 N. E. 524) the judgment in the Lichtenstein Case was affirmed. In the Lambrix Case the layer was made defendant, as was done in this ease, and in the course of the opinion the court says:
“The question is whether the receipt by the opposite party of a memorandum of the wager was a registry or record by the defendant. We think clearly it was not. To bring the ease within the statute, it was not necessary that the defendant personally should make the record or registry of the wager'. If it was made by any person in his employ, or on his behalf, or by his direction, that would be sufficient to charge him. But the memorandum was not made on his behalf. Also, if any indorsement had been made on the Oldorff memorandum by the defendant or by any one on his behalf, that would have been a registry of a bet made by him. But if the mere receipt of a memorandum by the defendant was a registry by him, necessarily the receipt of a memorandum by any one who might make a bet with a poolsoller or a bookmaker would make him a criminal equally with the poolseller or bookmaker. As appears from the discussion in the Lichtenstein Case (supra), such was not the intent of the law. It was directed against public gambling and professional gamblers. * * * ”
The New York statute was amended subsequent to the time of the decision, in the Lichtenstein Case, so as to make it a crime to engage in poolselling or bookmaking with or without writing;, and several convictions have been had under the amended statute where the bookmaker operated orally. People ex rel. Sterling v. Sheriff, 60 Misc. Rep. 326, 112 N. Y. Supp. 154; People v. Laude, 81 Misc. Rep. 256, 143 N. Y. Supp. 156; People v. Solomon, 174 App. Div. 144, 160 N. Y. Supp. 942.
Oral bookmaking may have been in operation in Louisiana in 190S, at the time when the statute was passed; but there is nothing in the record to show that it was, or that it was a generally known form or method of bookmaking. It is quite clear that it was being operated in 1917 by defendant, who admitted that he was a “professional racing
We are therefore of the opinion that defendant has not been charged with having committed an offense within the meaning Act No. 57 of 1908, and that the motion of accused should have been sustained, and he should have been discharged.
The second count of the information charges the defendant with having operated other gambling device; but the judge found the defendant not guilty of that count, it is not therefore before us for consideration.
It is o'rdered, adjudged and decreed that judgment appealed from' be avoided, annulled and reversed; and that defendant discharged from custody.
O’NIELL, J., concurs in the decree on the ground that one who does his betting without keeping books, writings or records of the bets, is not a bookmaker at all; the term “oral bookmaking” being a misnomer.