HAMITER, Justice
(dissenting).
“Gambling is a vice and the Legislature shall pass laws to suppress it.” This declaration coupled with a mandate is a part of our fundamental law, Section 8, Article 19 of the Louisiana Constitution of 1921, just *74 as it was contained in previous Constitutions of this state, having been placed there by delegates of the people in convention assembled. Whether the pronouncement with directions represents an unsound basic policy, or is otherwise improper,.and should be deleted from the Constitution is not for this or any other court to say. Any such deletion can legally he accomplished only by the electorate, either through their chosen delegates to a duly called convention or through their ratification of a proposed constitutional amendment. (Italics mine.)
For us to consider and decide in this cause is primarily whether the quoted constitutional provision is contravened by the Legislature’s action, through Act 276 of 1940, LSA-R.S. 4:141 to 4:161, in attempting to legalize public mass pari-mutuel wagering when conducted within an- enclosure where horse races have been licensed by the created Louisiana State Racing Commission. Stated in another way our principal purpose here is to determine two questions, namely: (1) is such pari-mutuel betting considered gambling? and (2) assuming that it is, does LSA-R.S. 4:141 to 4:161, which sanctions, authorizes and purportedly legalizes such wagering when conducted in a certain described manner, offend the constitutional mandate given the Legislature to “suppress” gambling?
Undeniably, public mass pari-mutuel Wagering is deemed gambling. In the very Statute under consideration it is so treated, the Legislature therein having declared that type of betting illegal when conducted “outside the enclosure where horse races have, been licensed * * LSA-R.S. 4:148 and 4:159. Again, clearly it comes within the definition of gambling as denounced by LSA-R.S. 14:90 which recites: “Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.” Further, in State v. Saia, 212 La. 868, 33 So.2d 665, this court, in a unanimous decision, judicially recognized it to be gambling.-
As to the stated second question I have heretofore expressed the view (and I still entertain it) that a statute which licenses and, as a consequence, encourages gambling offends the constitutional provision declaring gambling to be a vice and directing the Legislature to enact laws to suppress it.' Thus, in Giamalva v. Cooper, 217 La. 979; 47 So.2d 790, 795, involving an attack on a statute which imposed an annual license tax' on each slot machine, I wrote in a dissent-* ing opinion (among other things) the following: “Of paramount importance, hence, is the question of whether the 'legislation* under consideration tends to‘ encourage-rather than to suppress gambling. If it has that effect, undoubtedly it is violative of the Constitution. This important question, I think, cán be answered only in the affirmative. * * * ”
The statute under attack here does more, than merely license and encourage pari *76 mutuel wagering. It, as pointed out above, expresses unqualified legislative approval of and sets forth the procedure for such gambling when conducted under certain described circumstances.
. The majority take the position herein that the constitutional provision in question is not self-operative; and that by it “there is delegated to the Legislature, and to the Legislature alone, the power to suppress gambling, and to determine how, when, where, and in what respects gambling shall be prohibited or permitted.” (Italics mine.)
The fact that such provision is not self-operative (I concede that it is not) could and would be important here only in the event this were a criminal prosecution for an alleged gambling offense not denounced by our lawmakers or if this were a suit to recover bets made on horse races that were not violative of any law. For example, belonging to the first mentioned category, and to which the fact was important, are City of Shreveport v. Maloney, 107 La. 193, 31 So. 702; Talbot v. Truxillo, No. 27,326 of the docket of this court, State v. Scheffield, 123 La. 271, 48 So. 932; State v. Austin, 142 La. 384, 76 So. 809 and State v. Mustachia, 152 La. 821, 94 So. 408, and falling in the second mentioned category are Bain v. Grillot, 6 La.App. 825 and Mehle v. McLean, 19 La.App. 425, 139 So. 681. (Incidentally, those decisions are principally relied on by the majority as • sustaining their conclusion.) But the action here is for an injunction, grounded on the contention that the operation of the harness racing track is a nuisance per se since the statute authorizing it is violative of our Constitution; therefore, whether or not the, constitutional provision is self-operative is of no iftoment.
What is of great’ importance in the instant contest is whether by the word “sup-press” and the accompanying language, as contained in the constitutional mandate under consideration, the lawmakers were delegated the power “to determine how, when, where, and in what respects gambling shall be * * * permitted” as well as prohibited.
According to Webster’s New International Dictionary and the decision of this court in State v. Mustachia, supra, the word “suppress” means to prohibit, put down, or end by force. In neither of those authorities is it considered as being equivalent to or synonymous with “permit”’ or “encourage” or “regulate” or “approve” or “authorize” or “sanction” or “legalize”; rather, in the former authority “encourage” is noted as an antonymn of “suppress”.
And the stated definition of the word “suppress” is in keeping with my long held impression of its intended .meaning. Often I have heard the expression of “suppressing a riot”, and each time I have considered it as referring to a complete ending of the involved violence. Never have I thought of it as making reference to a regulating of the fighting or otherwise to *78 a permitting of the misconduct with cejtain restraints.
Furthermore, to say that by the mandatory language used (the Legislature shall pass laws to suppress it) the framers of the Constitution were delegating power for the prohibiting or permitting of gambling as the lawmakers see fit is to accuse those framers of doing a vain and useless thing. Without any constitutional authorization whatever the Legislature, by reason of its inherent police powers, could determine how, when, where and in what respects gambling should be prohibited or permitted, provided that any enacted regulations are not violative of constitutional guaranties. Presently, in the absence of constitutional authorization, regulations are provided by the Legislature regarding the possession and sale of intoxicating liquors, narcotics, etc.
Worthy of notice, moreover, is the fact that along with their suppression mandate the framers of the Constitution declared gambling to be a vice. In view of this unequivocal and strong disapproval of gambling, I can hardly believe that the constitutional convention intended to vest unlimited discretion in the Legislature respecting the matter of permitting and legalizing it.
I am of the opinion, therefore, that the attempted licensing and legalizing of gambling as is sought to be done by LSA-R.S. 4:141 to 4:161 is in contravention of the above quoted provision of the Louisiana Constitution. And to this view our-’jurisprudence lends support, this court having ■said in State v. Barbee, 187 La. 529, 175 So. 50, 57, that “It is not possible under the Constitution and laws of this State to license gambling as a lawful occupation * * *,” and in State v. Mustachia, supra [152 La. 821, 94 So. 409], that “*. * .* the Legislature might not license .any sort of gambling”. If this is not correct many forms of gambling other than pari-mutuel wagering may likewise be licensed and legalized by the Legislature without offending our fundamental law. Nevertheless, any legislation in that regard cannot receive my judicial approval unless and until the electorate deletes from the Constitution of this state the pronouncement that “Gambling is a vice and the Legislature shall pass, laws to suppress it.”
I respectfully dissent.