92 So.2d 798 (1957)
CITY OF MIAMI, a municipal corporation of the State of Florida, Appellant,
v.
Irwin KAYFETZ, Appellee.
Supreme Court of Florida, Division B.
February 13, 1957.
Rehearing Denied March 4, 1957.
*799 Olavi M. Hendrickson, Miami, for appellant.
George B. Everett, Miami, for appellee.
O'CONNELL, Justice.
The appellant, City of Miami, the defendant below, adopted the following amendment to an existing ordinance:
"Section 46. It shall be unlawful for female employees or entertainers in places dispensing alcoholic beverages for consumption on the premises to mingle or fraternize with the customers or patrons of such establishment.
"Section 47. It shall be unlawful for an owner, operator or manager of a place dispensing alcoholic beverages for consumption on the premises to employ or permit on the premises any person to solicit drinks for himself or any other person.

*800 "Section 48. It shall be unlawful for any employee or entertainer of a place dispensing alcoholic beverages for consumption on the premises to drink alcoholic beverages in said place of business and it shall be unlawful for an owner, operator, or manager of a place of business dispensing alcoholic beverages for consumption on the premises to permit any employee or entertainer to drink alcoholic beverages in said place of business.
"Section 49. It shall be unlawful for any woman to frequent or loiter in any tavern, cabaret or night club for the purpose of soliciting men to purchase drinks."
The appellee, plaintiff below, who is the owner of a beverage license and operator of a night club in the City of Miami, filed a suit for declaratory decree praying the Chancellor to declare the above amendment to ordinance invalid because improperly passed as an emergency measure, to declare same unreasonable and unconstitutional, and to enjoin the enforcement thereof. The Chancellor apparently found the ordinance properly passed as an emergency measure and we are not required to pass upon this question.
The Chancellor, after hearing testimony of the Mayor and the City Manager of the City of Miami and of the plaintiff, entered a temporary restraining order, enjoining the City from enforcing the amendment to the ordinance. In his detailed and well written temporary restraining order, he expressed doubt that the provisions of the ordinance in question were reasonable regulations and doubt that the conduct prohibited in those sections was "detrimental per se to the `health, safety and general welfare' of the inhabitants of the City, when viewed in the light of normal human behavior and social intercourse."
On final hearing the Chancellor entered a final decree making the restraining order permanent, assigning as the basis for this decree the same grounds as expressed in the temporary restraining order, i.e. that the ordinance was an unreasonable exercise of the police power of the City. The City appeals from this final decree.
It is clear from the testimony of the Mayor and the City Manager that the ordinance was designed and adopted to stop the practice followed by some purveyors of alcoholic beverages, wherein "B-girls", who may also be entertainers, sit with and encourage patrons to buy such alcoholic beverages both for the B-girl and the patron. It was admitted by the plaintiff that he uses this procedure in his business, that it increases spending by his patrons, and that he gives his employees who participate in this scheme a portion or percentage of the monies spent by the patrons.
The Mayor and City Manager further testified that the patrons on whom the B-girls operate are men; that these men are induced to purchase drinks by the visions, or promises, express or implied, of immoral relations with the girls; and that such arrangement offers a convenient place of operation for women who ply the trade of prostitution. They further testified that in some cases the patron who purchases drinks for the B-girls are charged for alcoholic drinks, whereas a non-alcoholic substance is served to the B-girls, constituting a fraud on the patron. They testified also that patrons are induced to drink more alcohol and to spend more than they otherwise would except for the practice complained of.
The only question raised by the appellant City is that the Chancellor erred in decreeing the ordinance to be unreasonable.
Plaintiff, as appellee here, did not file a brief with this Court, therefore we can determine his contentions only from his bill of complaint and the record in the court below.
In his bill of complaint plaintiff admits that it is his practice to allow his bartenders, hostesses, waiters and waitresses to accept *801 from his customers alcoholic beverages purchased by the customers. He admits that it is his practice to allow entertainers employed by him to engage in social fraternization with and accept from his customers beverages, both alcoholic and non-alcoholic. He alleges that social fratternization and the purchase of drinks by his patrons for his employees is his constitutional right.
He alleges in his bill of complaint that the practice is a valuable asset to his business, and that he will be damaged if not allowed to continue to follow it.
He further alleges, and apparently argued before the Chancellor, among other things, that the sections of the ordinance involved here are invalid because they (1) are an unreasonable exercise of the police power of the City; (2) attempt to prohibit conduct not detrimental to the health, safety and welfare of the City and its people; (3) do not afford equality and uniformity in their application; (4) violate Articles V and XIV of the Federal Constitution and Sections 1, 12 and 17 of the Declaration of Rights of our State Constitution, F.S.A.
He complains further that the ordinance places an unreasonable burden on him to police the conduct of his patrons to avoid violations of the ordinance by them, that it prohibits him the right to accept drinks purchased by his customers; and that it prohibits him from selling drinks to his employees even when they are off duty.
In construing the validity of the ordinance in question we must: (1) assume that a valid ordinance was intended. State ex rel. Ellis v. Tampa Water Works Co., 1908, 56 Fla. 858, 47 So. 358, 19 L.R.A.,N.S., 183; (2) construe the ordinance to be legal, if possible to do so, and strive to so construe it as to give reasonable effect to its provisions, State ex rel. Rand v. Brogden, 1922, 84 Fla. 520, 94 So. 653, Bentley-Gray Dry Goods Co. v. City of Tampa, 1939, 137 Fla. 641, 188 So. 758.
Further, the courts should be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a City through its proper officials to determine what rules are necessary for their own local government. State ex rel. Harkow v. McCarthy, 1936, 126 Fla. 433, 171 So. 314, City of Tacoma v. Keisel, 1912, 68 Wash. 685, 124 P. 137, 40 L.R.A.,N.S., 757.
Where an ordinance is within the power of the municipality to enact it is presumed to be reasonable, unless its unreasonable character appears on its face. State ex rel. Harkow v. McCarthy, supra; State ex rel. McAuley v. York, 1925, 90 Fla. 625, 106 So. 418. And when the authority to enact the ordinance does fairly appear, wide latitude is allowed in its exercise, where it does not appear that there has been, in action taken, an abuse of authority or a violation of organic or fundamental rights. State ex rel. Simpson v. Ackerly, 1915, 69 Fla. 23, 67 So. 232. If reasonable argument exists on the question of whether an ordinance is arbitrary or unreasonable, the legislative will must prevail. State ex rel. Skillman v. City of Miami, 1931, 101 Fla. 585, 134 So. 541.
There can be no question that the City of Miami, under its police power, has the right to enact reasonable regulations concerning the sale of alcoholic beverages, as well as other acts in the conduct of such business which do not directly pertain to the sale thereof. Sec. 168.07, F.S., F.S.A. City of Miami Beach v. State ex rel. Patrician Hotel Co., 1941, 145 Fla. 716, 200 So. 213.
In considering whether or not the ordinance now before us is reasonable, the test is not whether we think it a wise measure or the best means of approaching a problem, but rather whether it has a rational relation to the public health, morals, safety or general welfare and is reasonably designed to correct a condition adversely affecting the public good. And the test *802 must be applied in view of the character or nature of the condition to be remedied and all circumstances relating thereto.
The legislative body of the City of Miami found that the practice of having B-girls, female employees and female entertainers, mingle and fraternize with the patrons of establishments selling alcoholic beverages, to solicit the purchase of such beverages by such patrons is a practice which adversely affects the morals of the citizens of that community and its visitors, and is harmful to the general welfare of the community. We have no authority to disturb this finding unless shown to be without basis and the plaintiff made no showing that the finding was without basis or clearly erroneous.
All sections of the amendment to the ordinance affect, only, establishments which are licensed to sell alcoholic beverages for consumption on the premises.
Sections 46, 48, and 49 prohibit actions of persons not parties to this suit and therefore we cannot decide, in this opinion, the validity of those sections on their rights. Nelson v. State ex rel. Gross, 1946, 157 Fla. 412, 26 So.2d 60. It is to be noted also that Sections 46, 47 and 49 do not attempt to restrict the right of the plaintiff to sell alcoholic beverages, but rather to prohibit acts related to the conduct of such a business
The first section of the ordinance in question, i.e. Section 46, prohibits the mingling and fraternizing by female employees or entertainers of an establishment selling alcoholic beverages with the customers of such an establishment. The words "mingle" and "fraternize" when read in context with the whole of said ordinance have a clear meaning. It is obvious that they mean something more than the ordinary conduct of an employee or entertainer in the performance of duties usually and generally assigned to employees or legitimate entertainers in such establishments. See People v. King, 1952, 115 Cal. App.2d Supp. 875, 252 P.2d 78, for a discussion of the meaning of the word "mingle" in a similar ordinance. When considered in view of the evil found to exist by the City Commission and sought to be corrected by this ordinance we have no difficulty in finding a rational relation between the prohibition of mingling and fraternizing by the female employees and entertainers with customers of such places and the public good. Nor do we believe that the prohibition of such conduct is an unreasonable exercise of the police power. The burden is on the plaintiff to show the ordinance to be unreasonable. We find nothing in the record before us to indicate that he has met and overcome the presumption that the ordinance is reasonable. Nor can we agree with plaintiff that he has a constitutional right to have his employees or entertainers fraternize with his patrons.
The second section of the ordinance in question, i.e. Section 47, makes it unlawful for an owner, operator or manager of such an establishment to employ or permit on the premises any person to solicit drinks for himself or herself or any other person.
Although it is undoubtedly profitable to plaintiff to have his employees, or other persons, seek to increase his sales of liquor by soliciting his patrons to buy such beverages for the solicitor, or others, such practice is not a property right.
In the case of City of Tacoma v. Keisel, supra, it was held that a licensee had no inherent right to have his patrons "treat" one another by one buying an alcoholic drink for another and that an ordinance prohibiting the practice of treating did not deprive the licensee of property without due process of law. We agree with the holding in that case.
Plaintiff has shown us no basis upon which this second section of the ordinance can be declared to be unreasonable or otherwise invalid. Nor do we find any basis in the record to find the ordinance is unreasonable. *803 Clearly, this section is related to the evil sought to be cured for as we understand it, it is through the solicitation of purchase of drinks by patrons that the so-called B-girls earn their commissions, fees, or wages. It is also through this operation that the customer is encouraged to spend and drink more than he otherwise would and it is through this practice, also, that the customer may be charged for an alcoholic beverage purchased for the solicitor when actually a non-alcoholic beverage is served to her. It is through this operation, and the mingling and fraternizing by the female employees and entertainers with the patrons, that the immoral acts discussed by the City Manager and Mayor find their beginning.
This section may place some burden on the plaintiff, and other licensees, to police their premises to prevent such solicitation of drinks, but this burden is not so great as to be oppressive. In the case of City of Tacoma v. Keisel, supra, the ordinance there under attack put the burden of preventing "treating" on the owner, yet was held valid.
We do not construe this section of the ordinance to prevent a customer from treating whom he chooses to voluntarily without solicitation, as long as section 46 is not violated, but only to prevent the solicitation of purchase of such beverages by any person in such places.
It is interesting to compare the acts prohibited by this section and the acts prohibited by the ordinance of the City of Miami Beach in the case of State ex rel. Hosack v. Yocum, 1939, 136 Fla. 246, 186 So. 448, 121 A.L.R. 270. The ordinance under attack in that case made it unlawful for taxicab or other for-hire vehicles to solicit patronage of passengers for inns, hotels or apartments. In that case the evils sought to be corrected or prevented were, in our opinion, less harmful to the public morals and welfare than in the case now before us, nevertheless this Court held the ordinance to be reasonable exercise of the police power. The principles of law applied in that case fit equally well here.
The third section of the ordinance, i.e. Section 48, makes it unlawful for any employee or entertainer of a place selling alcoholic beverages for consumption on the premises to drink alcoholic beverages on such premises and unlawful for an owner, operator or manager of such place to permit an employee or entertainer to drink such beverages on said premises.
This section does not distinguish between female and male employees or entertainers. The licensee is prohibited from allowing the named classes of persons from drinking such beverages on his premises, whether they be on duty or not.
This section of the ordinance, insofar as it pertains to the plaintiff, prohibits him from selling such beverages to his employees and entertainers, male and female, whether they be on duty or not, and makes him responsible if they drink alcoholic beverages on his premises, whether purchased there or not. It does not prohibit these persons from consuming such beverages on the premises of another licensee.
Absent the conduct prohibited by the other sections of the amendment to the ordinance, we see no more connection between the public welfare, safety and morals, and the consumption, in itself, of alcoholic beverages by the employees and entertainers, than between the public welfare, safety and morals, and the consumption of such beverages on the licensee's premises by his patrons.
As we understand the purposes of the amendment, it is not to prohibit drinking by the employees and entertainers for this is not the evil complained of. Rather it appears to us that the evil sought to be eliminated is the mingling and fraternizing by the female employees and entertainers with the patrons, the solicitation of alcoholic *804 beverages, the frequenting and loitering for the purpose of such solicitation, the immoral acts which grow out of such contacts, and the perpetration of fraud on the patrons of such places.
We are forced to conclude that Section 48 of the amendment to the ordinance is unreasonable and therefore invalid.
We also find this ordinance to be violative of the equal protection provisions of Fla. Const. Declaration of Rights Section 1, and U.S.Const. Amend. XIV, Sec. 1, in that it prohibits the sale of such beverages by the plaintiff to his employees, but allows other licensees to sell such beverages to such employees.
The amendment contains a severability clause. While related, each of the four sections are independent. Section 48 can be eliminated and the other sections retained without doing harm to the remainder. City of Miami v. State ex rel. Shehan, 1946, 158 Fla. 56, 27 So.2d 829.
The last section of the ordinance, Section 49, makes it unlawful for any woman to frequent or loiter in any tavern, cabaret or night club for the purpose of soliciting men to purchase "drinks". We construe the word "drinks" as used in this section and in Section 47 of the ordinance to mean alcoholic beverages.
Having determined in our treatment above, of Section 47, that it was a reasonable exercise of the police power to prohibit the solicitation of purchase of alcoholic beverages, it necessarily follows that the frequenting or loitering for such a purpose may be prohibited.
We are not unmindful that we are required to uphold the decree of the Chancellor, if we can find any ground on which to do so. We have for this reason considered the contentions of plaintiff that the ordinance in all of its sections is violative of Fla. Const. Declaration of Rights, Sections 1, 12 and 17, and U.S.Const. Amend. V and XIV, but we must reject this contention except as to Section 48, as above stated.
For the reasons above stated we therefore hold that Sections 46, 47 and 49 of the subject ordinance are good and valid and not unreasonable exercises of the police power of the City of Miami, insofar as they relate to the plaintiff, but that Section 48 is invalid for the reasons above expressed.
Lest it be taken from this opinion that the B-girl practice is of general use by the owners of liquor licenses in the City of Miami, it should be stated that the City Manager and the Mayor in their testimony were careful to state that the practice was used by only a relatively few licensees. But as in most instances the harmful actions of a few of a class react to the detriment of all similarly situated.
Reversed in part, affirmed in part.
TERRELL, C.J., and HOBSON, and DREW, JJ., concur.