## CITY OF MIAMI v. FORBES, et al.
No. 4997.

Circuit Court, Dade County, Criminal Appeal.

November 29, 1960.

Garber & Chadroff, Miami, for appellants.

Olavi M. Hendrickson, City Attorney, John G. Thomas, Ass't. City Attorney, for appellee.

ROBERT L. FLOYD, Circuit Judge.

The appellants, Carol Forbes and Irving Berman, were arrested by City of Miami police officers on the morning of January 7, 1960. Carol Forbes was charged with violation of city ordinance no. 6515, section 2, and Berman was charged with violation of section 3 of the same ordinance. On January 11, 1960 the same defendants were arrested for violations of other sections and chapters of the city ordinances, each defendant being charged with three separate violations, making a total of four charges against each defendant. The eight alleged violations against the defendants were consolidated for trial in the lower court and with consent of counsel have been appealed in like manner.

Following is a list of the trial court cases, with the ordinances or statutes alleged to have been violated —

| Case no. | Defendant | Violation of |
|---|---|---|
| 44469 | Forbes | Ord. 6515, §2 |
| 44470 | Berman | Ord. 6515, §3 |
| 44805 | Berman | Ch. 43, §8(a), City Code |
| 44806 | Berman | §856.02, F.S. and ch. 43, §38, City Code |
| 44804 | Berman | Ch. 43, §8(c), City Code |
| 44807 | Forbes | Ch. 43, §8(b), City Code |
| 44808 | Forbes | Ch. 43, §8(a), City Code |
| 44809 | Forbes | §856.02, F.S. and ch. 43, §38, City Code |

## Ordinance no. 6515 of the City of Miami is set forth below —

AN ORDINANCE MAKING IT UNLAWFUL FOR ANY PERSON, MALE OR FEMALE, TO PERFORM AN ACT, SKIT OR PLAY COMMONLY KNOWN AS A STRIP-TEASE; DEFINING THE PHRASE STRIP-TEASE; MAKING IT UNLAWFUL FOR ANY PERSON, FIRM OR CORPORATION TO KNOWINGLY EMPLOY ANY PERSON, MALE OR FEMALE, TO PERFORM IN AN ACT COMMONLY KNOWN AS A STRIP-TEASE; PROVIDING FOR THE REVOCATION OF ALL CITY OCCUPATIONAL LICENSES BY THE MUNICIPAL JUDGE UPON A CONVICTION FOR A VIOLATION OF THIS ORDINANCE; PROVIDING A PENALTY FOR THE VIOLATION OF SAID ORDINANCE.

BE IT ORDAINED BY THE COMMISSION OF THE CITY OF MIAMI, FLORIDA:

Section 1. That a strip-tease, for the purpose of this ordinance, shall be defined as an act, skit or play to be held or performed in any public place, in any private club or in any association or place where the public or private members may attend, in which any person, male or female, disrobes or removes clothing from his or her person, or opens or shifts such clothing so as to expose parts of the body in a lewd or lascivious manner or with the design to arouse the sexual desires of onlookers, or who being partially clothed when appearing, dresses or places clothing upon the body or any part thereof in such a manner.

Section 2. It shall be unlawful for any person, male or female, to engage or perform in any skit, act or play in the places set forth in Section 1 above in which clothing is taken off or put on the body of the performer or shifted so as to expose any part of the body in the manner and with the design set forth in Section 1 hereinabove.

Section 3. It shall be unlawful for any person, firm or corporation, to knowingly engage an act, skit or play having in it any of the acts defined or described in Section 1 hereinabove, or to allow such a performance after an act, skit or play has been booked, employed or has been allowed to be exhibited or played in the place of business of such person, firm or corporation.

Section 4. If any person, firm or corporation shall be convicted of a violation of this ordinance the municipal judge shall, in addition to the other penalties provided for herein, revoke all of the municipal licenses in existence allowing the operation of the location or place where the violation took place and no such licenses shall be issued thereafter to the convicted person or for him and any other person to operate the same business at the same or any other location.

Section 5. Any person, firm or corporation violating the provisions of this ordinance upon conviction thereof shall be fined in a sum not exceeding $500.00 or shall be imprisoned in the municipal jail for a term not exceeding 60 days or shall be punished by both such fine and imprisonment.

Section 6. That this ordinance is hereby declared to be an emergency upon the ground of urgent public need for the preservation of peace, safety, health and property in the City of Miami.

PASSED on first reading by title only this 4th day of November, 1959.

PASSED AND ADOPTED on second and final reading this 16th day of December, 1959.

ATTEST:   *F. L. CORRELL*              *ROBERT KING HIGH*
            City Clerk                          Mayor

Section 43-8 of the City of Miami Code is set forth below —

*Conduct and dress of persons appearing in shows or acts*

(a) It shall be unlawful for any person to permit participation by any person or for any person to participate in any scene, sketch, act or play in which obscene language is used or obscene conduct is engaged in.

(b) It shall be unlawful for any person to permit a female person to appear, or for any female person to participate in and appear in any scene, sketch, act or play with the breasts or lower part of the torso beginning at the hip line and buttocks uncovered, or so thinly covered by mesh, transparent net, skin-tight materials which are flesh-colored and worn skin tight, so as to appear uncovered.

(c) It shall be unlawful for any person to permit a female person to appear, or for any female person to participate and appear, in any scene, sketch, act or play, fully or partly clothed, and to gradually disrobe by discarding clothing or attire so that the breasts or lower part of the torso beginning at the hip line and buttocks are uncovered, or so thinly covered by mesh, transparent net, skin-tight materials which are flesh-colored and worn skin tight, so as to appear uncovered.

A portion of section 43-38 of the City of Miami Code is set forth below —

It shall be unlawful to commit, within the limits of the city, any act which is recognized by the laws of the state as a misdemeanor as set out in the Florida Statutes . . .

At the outset it should be pointed out that in addition to the adjudications of guilt relating to cases numbered 44469 and 44470, the lower court judge appended in longhand the following—"All municipal ordinances are revoked as regards the Casbah Bar, re: Ord. 6515, Sec. 4." This language is of course meaningless and when it was brought to the attention of counsel for the parties by the court, counsel stipulated at the oral argument that the word "ordinances" shall, for the purpose of this appeal, mean "licenses."

All of the violations charged in the lower court cases arise as a result of the acts or conduct of Carol Forbes on the morning of January 7, 1960 in the Casbah Bar located in the city of Miami. She was employed at a weekly salary by this establishment, owned or operated as one of the licensees by Irving Berman. Her specialty in this employment, she testified, was as a dancer. The city, in its case in chief, endeavored to prove that the dance was performed in such a manner that it left the realm of "art" and entered into the sphere of a "strip-tease," in such a way that it fell within the conduct prohibited by ordinance no. 6515, section 1.

At the beginning of the trial in the lower court, counsel for the defendants below filed a comprehensive motion to quash the affidavits and warrants in the several cases, and the blotter entries and charges made thereunder, on twelve specified grounds. This motion may be found on page 7 of the transcript of testimony filed in the record of this cause and continuing to page 13 thereof. The motion attacks the constitutionality of the various sections of the City Code, asserts that the charges on the police blotter or docket entry fail to state a cause of action or a violation of law, raises the questions of vagueness and indefiniteness, and double jeopardy, and questions the right of the City of Miami to revoke licenses upon the finding of a conviction of a violation of ordinance no. 6515. This motion was denied by the lower court judge and the cause proceeded to trial.

The prosecution's case consisted of the testimony of two City of Miami plain clothes police officers. These gentlemen were present in the Casbah Bar the morning of the arrest and witnessed the performance by the defendant, Carol Forbes. The only other witness for the city at the trial was a detective sergeant but he did not witness the acts complained of and was used merely to establish that the Casbah Bar was under the control of the defendant, Irving Berman, which was stipulated to later in the trial by counsel for the defendants below.

At the conclusion of the city's case, the attorney for the defendant moved to dismiss the charges, reiterating the grounds set forth in his motion to quash and on the further ground that the city had failed to establish by competent evidence any of the charges made against the defendants. This motion was denied and the ruling thereon assigned as error by the defendants. In the assignments of error filed by the defendants herein, ground no. 3 thereof states that the trial court erred in denying the defendants' motions for a directed verdict (motions for dismissal) at the close of *all* the testimony. A careful review of the transcript of testimony and the record of the proceedings in the trial court does not reflect that the defendants' counsel made such a motion at the conclusion of all the evidence and testimony in the case below. While the absence of such a motion may throw doubt on the defendants' right to have the question of the sufficiency of all the evidence reviewed, the original motion for dismissal is not waived by the subsequent introduction of evidence on behalf of the defendants, and that question is still preserved. See Wiggins v. State (Fla. 1958), 101 So. 2d 833.

The defense in the court below relied on the testimony of two patrons of the Casbah Bar the morning of the alleged violations, one "expert" witness, and the two defendants. At the conclusion

of all the testimony the court reserved its ruling, and on June 1, 1960 entered adjudications of guilt on all charges. Defendants' motions for a new trial were denied on June 7, 1960, and this appeal taken.

As a result of independent research, this court wishes to set forth the language employed by Chief Justice Rivers Buford in State ex rel. Swanboro v. Mayo (Fla. 1944), 19 So. 2d 883, inasmuch as the conduct in that case and the conduct here deals with what would constitute a lewd, lascivious act. Mr. Chief Justice Buford states, beginning at page 884 —

> The statute did not attempt, however, to define the acts which would constitute a lewd and lascivious act. It, therefore, follows that whether or not the act charged constituted a lewd and lascivious act was a question to be submitted to a court of competent jurisdiction for its determination. Whether or not the act charged by the indictment or information and held by the court to constitute a violation of the statute was committed by accused is a matter to be determined by the jury. It also follows that under this statute it became necessary for the prosecutor to particularly and definitely allege the act committed and aver that it was a lewd and lascivious act, so that the accused would be put on notice and be advised as to the act as to which he must present his defense. This is necessarily true because an act which might be considered by one respectable and upright citizen as lewd and lascivious might be considered by another equally respectable and upright citizen as neither lewd nor lascivious. An act which might have been considered by the general public a few years ago as an indecent exposure of the person and lewd and lascivious in its character might today be not frowned upon, nor condemned by upright, honorable and virtuous people.

> A fair example of the change of attitude of the times is found in the fact that if forty years ago either a man or a woman had donned the apparel popular on our bathing beaches today and in such apparel had attempted to mingle with the public on any bathing beach such person would probably have been immediately conducted to the common jail and branded as a lewd, lascivious and indecent person.

> The performance of a dance which a few years ago, and within the time of the memory of this writer, would then have been considered a lewd and lascivious performance and which would have been banned as an indecent performance, meets popular approval today as an exhibition of graceful movement and artistic performance unconnected with lewd and lascivious suggestion. Even the conventional waltz and the two-step were until recent times considered by a great many worthy and high-minded people as lewd and lascivious devices calculated to promote the works of the Devil. There are some good and conscientious people who still adhere to this view. This is their right which we shall not question but it is not for them to determine whether or not one who so indulges has thereby violated the statute, supra.

> It is elementary that when a criminal act is charged under a statute such as this the charge must be so couched that the accused may be advised definitely and precisely of the act which the prosecution intends to prove was committed by him and whether or not the accused is guilty of a lewd and lascivious act may not be left to the option or judgment of the prosecutor because what one prosecutor might consider a lewd and lascivi-

ous act another prosecutor of equal moral fiber and integrity might consider void of any lewd or lascivious element.

So the act complained of in such cases as this must be definitely alleged and averred to be lewd and lascivious thereby leaving the matter for judicial determination as to whether or not the act charged violates the statutes.

The foregoing language is set forth at length because it places a case of this kind in what this court feels is its proper perspective.

Based on the Swanboro case, supra, it is evident that cases numbered 44809 and 44806, charging each defendant with a violation of section 856.02, Florida Statutes, and chapter 43, section 38 of the City Code in the following words — "was a vagrant, by being a lewd, wanton or lascivious person . . ." must of necessity fall. The charges in these two cases did not apprise the defendants of what misconduct the city intended to rely upon for conviction.

It is, therefore, the opinion and judgment of this court that the lower court should have granted the motions to quash the two above mentioned cases for the aforementioned reasons.

We next approach the court cases involving city ordinance 6515, sections 2 and 3. In the court below case no. 44469 charged Carol Forbes with a violation of section 2 of this ordinance and case no. 44470 charged Irving Berman with a violation of section 3 thereof. It is upon the basis of the provisions of section 4 of the ordinance that the licenses of the Casbah Bar have been revoked. It was stipulated and agreed by and between counsel in the oral argument before this court that the "licenses" referred to include the beverage licenses for the purpose of selling alcoholic beverages for consumption on the premises.

Before approaching the problems involved in the first three sections of the cited ordinance, the court will deal with section 4 thereof, which provides that if any person, firm or corporation shall be convicted of a violation of this ordinance (ordinance 6515) the municipal judge shall, in addition to other penalties provided for therein, revoke all of the municipal licenses in existence allowing the operation of the location or place where the violation took place and no such license shall be issued thereafter to the convicted person or for him to any other person to operate the same business at the same or any other location. This section, calling for mandatory action on the part of the municipal judge, is extremely serious in its pronouncements. This is true even though it is the law of this state that a holder of an alcoholic beverage license does not hold the same as a matter of right, but as a privilege. The defendants below attack this provision in their briefs

with a great deal of fervor. The city has not elected to cite this court to any case having to do with the revocation of a liquor license by a municipality. As a matter of fact, the city rests its brief on the citation of one Florida case, the same being City of Miami v. Kayfetz (Fla. 1957), 92 So. 2d 798. The writer of this opinion is more than passingly familiar with the Kayfetz case. It is hoped that should this writer's opinion be reviewed in subsequent appellate proceedings in the instant case, that counsel for both parties will favor the appropriate reviewing court with briefs, unlike counsel for the appellee in the Kayfetz case.

Section 562.45, Florida Statutes, has been construed to limit the powers or rights of any incorporated municipality in this state in enacting ordinances affecting the sale of alcoholic beverages to three fields — (1) Regulating the hours of business, (2) Regulating the location of the place of business, and (3) Prescribing sanitary regulations therefor. See Singer v. Scarborough (Fla. 1944), 20 So. 2d 126; City of Miami v. Kichinko (Fla. 1945), 22 So. 2d 627. The latter two cases were decided long after City of Miami Beach v. State ex rel. Patrician Hotel Co. (Fla. 1941), 200 So. 213, which is cited in the Kayfetz case, supra.

As a matter of fact the question involved in the Patrician Hotel Co. case was actually a question of location of the liquor license, which, of course, is subject to municipal regulations. The only conflict arising at first blush is whether section 168.07, Florida Statutes, conflicts with section 562.45, Florida Statutes, and this question upon due consideration has been resolved in favor of the latter statute by the Singer and Kichinko cases, supra. It therefore follows that section 4 of ordinance 6515 is proscribed by chapter 562.45, Florida Statutes, and must therefore fall. A municipality does not possess the power or right to revoke an alcoholic beverage license issued by the state of Florida.

In the Singer v. Scarborough case, supra, it was held that the state beverage director may not withhold the issuance of a liquor license on the ground that the municipality had not yet granted a permit to sell intoxicating beverages. It follows, therefore, that in this field the granting and revocation of alcoholic beverage licenses is solely within the province of the state, except in those limited areas wherein municipalities have been granted special authority. It is the opinion and judgment of this court that section 4 of ordinance 6515 is invalid and of no force and effect.

Our attention is next directed to the first three sections of ordinance 6515. Section 1 of the ordinance attempts to define a "striptease". Section 2 pertains to the performer, male or female, and prohibits the performer from engaging in or performing any acts

defined by section 1. Section 3 pertains to the owner, operator or employer who "knowingly" engages a performer to do any of the acts defined or described in section 1, or allowing such a performance after the same has been booked, employed or allowed to be exhibited or played in the place of business of such owner, operator or employer. The underlying foundation of section 3, relating to the owner, operator or employer, is to "knowingly engage" the performer to do the acts described in section 1. Measured solely by the evidence presented in the lower court in the city's case in chief, so that the same is tested by reason of the defendant's motion to dismiss made at the conclusion thereof, the testimony and evidence of the two city police officers falls far short of showing that the defendant, Irving Berman, "knowingly engaged" the defendant, Carol Forbes, to perform the act defined or described in section 1 of ordinance 6515. No testimony whatsoever was presented to show what acts or conduct the defendant, Berman, was guilty of *prior* to the actual performance. The only testimony which is pertinent after the performance actually started with regard to the defendant Berman, was that he was standing at the end of the bar. This is entirely insufficient to show that he "knowingly engaged" the defendant, Carol Forbes, to do any acts which would constitute a violation of the ordinance.

It is noted that this portion of this opinion deals only with the words "knowingly engaged". This is for the reason that the title of the ordinance makes it unlawful for any person, firm or corporation to "knowingly employ any person, male or female, to perform in an act commonly known as a strip-tease . . ." The body of the ordinance goes much further than "knowingly engage" and proscribes the conduct of "or to allow such a performance after an act, skit or play has been booked, employed or has been allowed to be exhibited or played in a place of business of such person, firm or corporation." It is the opinion of this court that section 3 beginning with the words "or to allow such a performance" etc. to the end of quote and continuing to the end of that sentence and section, must fall because the title of the ordinance does not place a person on notice that the allowance of such a performance is contained in the ordinance itself.

It is fundamental in the field of legislative drafting that there must be contained in the title of an ordinance or an act of the legislature, sufficient wording so that a reasonable person is placed on notice of what is prohibited therein. There is a vast difference between "knowingly engaging an act" and "allowing" such a performance. It is therefore the opinion and judgment of this court that the evidence presented in the city's case in chief does not meet the burden of establishing a prima facie case of a violation of section 3 of ordinance 6515 and that beginning with

the words "or to allow such a performance etc." and continuing to the end of said section, that portion of the section is void and of no force and effect.

Case no. 44470 against defendant, Irving Berman, should therefore have been dismissed at the conclusion of the city's case.

Directing our attention next to section 2 of ordinance 6515, having to do with the performer herself, the question recurs whether the language "in a lewd or lascivious manner or with the design to arouse the sexual desires of onlookers" meets the test of specificity in a penal charge. The gist of the charge is that the performer did "open or shift her clothing so as to expose part of the body in a" manner or with design prohibited by the ordinance. Again reverting to the language and holding in State ex rel. Swanboro v. Mayo, supra, it is apparent that the charge as contained in the docket entry or police blotter does not with sufficient specificity meet this burden. No specific acts are set forth or alleged to have been conducted by the performer upon which the defendant could be apprised of the acts constituting "lewd or lascivious" or "with design to arouse the sexual desires of onlookers." See also State v. Christine (La. 1959), 118 So. 2d 403; State v. Truby (La. 1947), 29 So. 2d 758; and Adams v. Culver (Fla. 1959), 111 So. 2d 665. It is the opinion and judgment of this court that the charge as phrased in the docket entry or police blotter does not meet the test of specificity and should therefore fall, and that the trial judge should have granted defendant's motion to quash this charge.

Our attention is next directed to chapter 43, section 8(b and c) of the City Code. Carol Forbes is charged with violating subsection (b) of section 8, by appearing and participating in the act proscribed, and defendant Irving Berman is charged with a violation of subsection (c) of section 8, by "permitting" the female person to appear and participate in such an act proscribed. Defendant Berman is also charged with violation of subsection (a) of section 8 by "permitting" participation of any person in any act in which obscene language is used or obscene conduct is indulged in. At the outset we shall deal with subsection (a) of said ordinance. Here again the charge as framed on the docket entry of case no. 44805 does not set forth what constitutes the "obscene conduct" indulged in. The words "obscene conduct" stand in the same shoes as the words "lewd and lascivious behavior" or "lewd and lascivious conduct". Standing alone, these words are subject to the various interpretations placed upon them by people of varying degrees of moral standards. By virtue of the case previously cited, State ex rel. Swanboro v. Mayo, case no. 44805 contained on the docket entry charging a violation of chapter 43, section 8(a) of the City Code against Irving Berman

should have been quashed upon the motion of defense counsel. Section 8(b) of chapter 43 of the City Code, as it relates to the performer, contains precise language which prohibits certain conduct and sets standards by which this conduct may be measured. The language leaves nothing in doubt as to the prohibited conduct, and a reasonable person applying a reasonable interpretation to the language used is made aware of the conduct proscribed. It is therefore, the opinion and judgment of this court that the testimony and evidence presented in the lower court was sufficient to establish a violation of said charge, and the judgment of conviction and sentence below be and they are hereby affirmed as to this charge.

Reverting again to subsection (c) of section 8, chapter 43, an examination of the docket entry in case no. 44804 against Irving Berman reflects that the charge therein contained goes beyond the wording of the ordinance itself. The charge contains language relating to lewd and lascivious conduct and designs to arouse the sexual instincts of the onlookers, all of which is not contained in the ordinance in question. However, this is regarded by this court as surplusage and the court's holding is that there is sufficient wording in the docket entry to withstand the defendant's motion to quash the charge at the beginning of the trial. The foundation upon which this charge is based revolves around the word "permit". That which should not be permitted is specifically set forth in the ordinance. The testimony reflected that the defendant, Berman, one of the licensees of the Casbah Bar, was present in the bar at the time the performance was going on. There is no testimony that he took any steps to stop the performance or to caution the performer about the limits beyond which she should not go. It is hardly conceivable that an employer or owner or operator of a privileged business such as this night club, aware of the specific acts prohibited by this ordinance, would be present in the club at the time the act is being performed and not be aware that this specific subsection is being violated. This court cannot give such a strained construction to the word "permit". Under the holding in City of Miami v. Kayfetz, supra, it is the opinion of this court that the City of Miami has the power and authority to enact the ordinance in question, and to prohibit the conduct proscribed. It is further the opinion of this court that the presence of the defendant Berman in the establishment at the time the performance was being conducted, without any action on his part to stop the same or to caution the performer, is sufficient under the evidence and testimony in this case, to find him guilty as charged. Therefore, case no. 44804 against Irving Berman charging him with a violation of chapter 43, section 8(c) of the City Code, and the judgment and conviction thereon be, and the same are hereby affirmed.

Throughout this opinion, this court has been mindful of the burden on the defendants below attacking the validity of various sections of the mentioned ordinances to show that such ordinances are unreasonable. In line with the opinion expressed in City of Miami v. Kayfetz, supra, where an ordinance is within the power of a municipality to enact, it is presumed to be reasonable unless its unreasonable character appears on its face, or unless it clashes directly with a statutory or constitutional provision of this state. This court is certainly mindful and aware of the evils which the city commission is endeavoring to legislate out of existence. But, even as in the Kayfetz case, as sweeping an opinion as it is, the Supreme Court in that case held that some of the legislative endeavors of the city commission were violative of the equal protection provisions of the Florida and United States constitutions, and therefore, struck them down.

The judgments and convictions and sentences are therefore reversed in part and affirmed in part, consistent with the opinions expressed herein. This cause is, therefore, remanded to the municipal court in and for the City of Miami, for such action as is not inconsistent with this opinion.

The costs of this appeal shall be borne one quarter by the appellants (defendants below) and three quarters by the appellee, the City of Miami.